656 A.2d 422

NEW JERSEY TRANSIT CORPORATION, PLAINTIFF–
APPELLANT, v. BOROUGH OF SOMERVILLE,
DEFENDANT.

Argued January 4, 1995—Decided April 19, 1995.

*Joseph L. Yannotti,* Assistant Attorney General, argued the cause for appellant (*Deborah T. Poritz,* Attorney General of New Jersey, attorney).

*Michael D. Sullivan* argued the cause for *amicus curiae* New Jersey State League of Municipalities (*Stickel, Koenig & Sullivan,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

New Jersey Transit Corporation (Transit) contests the local real property tax assessments levied against it by the Borough of Somerville (Somerville). At issue is what limitation period applies to the filing of a petition by the State or one of its political subdivisions contesting real-property tax assessments—the filing time limitations imposed under *N.J.S.A.* 54:3–21 or the ten-year period imposed under *N.J.S.A.* 2A:14–1.2.

I

Transit was created by the Public Transportation Act of 1979, *N.J.S.A.* 27:25–1 to –24. Transit is a department of the executive branch of the State, within, but independent of, the Department of Transportation (DOT). *N.J.S.A.* 27:25–4(a). Transit is the State's primary public transportation agency, and is authorized to and actually does operate commuter rail service on various rail lines throughout the State. *N.J.S.A.* 27:25–5. By virtue of *N.J.S.A.* 27:25–21, Transit was vested with certain properties previously belonging to other railways, including the property in Somerville that is the subject matter of this appeal.

The subject property is identified on the Borough of Somerville's Tax Map as Block 123, Lot 1–E (now 1.05), and consists of an embankment supporting the elevated Raritan Valley commuter line. That line was previously owned by the bankrupt Central Railroad of New Jersey (CNJ), and was part of the property transferred by CNJ to the Consolidated Rail Corporation (Conrail) in 1976. The State acquired this property from Conrail in 1978. By letter dated January 9, 1979, the DOT notified the clerk of every municipality in which it had acquired railroad property pursuant to the Regional Rail Reorganization Act, 45 *U.S.C.A.*

§§ 701 to 797m, of its acquisition and claimed exemption from local property taxation.

Transit became the owner of the property in 1979. However, there was confusion about the ownership of the parcel. In January 1982, Transit notified Somerville's tax assessor of its acquisition of the property and sent the assessor a copy of certain railroad-valuation maps, asking that the assessor mark the block and lot numbers from the borough's tax maps. Two years later, in May 1984, Transit wrote to Somerville's Tax Collector, returning various 1983 property tax bills that had been addressed to "CRR of NJ (N.J. Department of Transportation)." In the accompanying letter, Transit attempted to identify ownership of the various parcels involved, noting that several parcels "appear to be owned by Conrail," including Block 123, Lot 1.05. Somerville's tax assessor apparently agreed, writing a short time later to Transit that he had determined that Block 123, Lot 1.05 had not been conveyed to Transit, but actually belonged to Conrail.

That understanding remained until the summer of 1990. In the course of resolving other property-tax matters with Somerville, the borough's attorney forwarded to Transit's counsel a list of properties that the parties had been discussing, along with a list of other properties on the Somerville tax rolls that the borough believed were "still owned" by Transit. Included on the latter list was Block 123, Lot 1.05, that the Borough indicated had been assessed to "CRR of NJ, N.J. Department of Transportation" and had many years of back taxes outstanding. Somerville then sent Transit a tax bill for this property, for the tax years 1981 to 1990.

On or about August 15, 1991, Transit filed petitions with the Somerset County Tax Board contesting the assessments. (Transit also filed petitions contesting the 1991 and 1992 tax assessments, but the Tax Court found those appeals timely and set aside those assessments; consequently, we do not address them further.) Each petition sought exemption from the 1981 to 1990 tax assessments pursuant to *N.J.S.A.* 27:25-16 (Transit tax exemption), *N.J.S.A.* 54:29A-1 (granting exemptions to certain rail property),

and 45 *U.S.C.A.* § 581(c)(5) (federal exemption of rail property, retroactive to October 1, 1981).

The Somerset County Board of Taxation found the appeals untimely and affirmed the assessments. Transit then appealed to the Tax Court. Somerville determined not to oppose Transit's challenge to those assessments. The Tax Court dismissed Transit's appeals *sua sponte*, finding that it lacked jurisdiction to hear them, as they had not been timely filed within the statutory limitations period imposed by *N.J.S.A.* 54:3–21. 13 *N.J.Tax* 339 (1993).

Transit appealed to the Appellate Division, arguing that *N.J.S.A.* 2A:14–1.2, the statutory *nullum tempus* provision, allowed Transit to file an appeal at any time within the ten-year limitations period contained therein. The Appellate Division affirmed the Tax Court's determination that *N.J.S.A.* 2A:14–1.2 did not apply to real-property tax appeals. However, the Appellate Division did find that Transit was entitled, under federal preemption doctrine, to the retroactive tax exemption granted by 45 *U.S.C.A.* § 581(c)(5). Consequently, Transit was relieved of liability for those assessments asserted against it after the operational date of the federal tax exemption provision, October 1, 1981. We granted Transit's petition for certification, 137 *N.J.* 314, 645 *A.*2d 142 (1994), and now affirm the Appellate Division.

## II

In a trio of 1991 decisions—*Holloway v. State,* 125 *N.J.* 386, 593 *A.*2d 716 (1991); *New Jersey Educational Facilities Auth. v. The Gruzen Partnership,* 125 *N.J.* 66, 592 *A.*2d 559 (1991) (*Gruzen* ); and *Devins v. Borough of Bogota,* 124 *N.J.* 570, 592 *A.*2d 199 (1991)—we abolished the long-recognized, oft-quoted, and anachronistic doctrine of the common law, "*nullum tempus occurrit regi* "—"no time runs against the king." We declared the *nullum tempus* doctrine "abrogated with respect to the State or its agencies insofar as it would preclude the application of general statutes of limitations to the State." *Gruzen, supra,* 125 *N.J.* at

76, 592 *A*.2d 559. Our ruling was prospective from December 31, 1991, "subject in all aspects to any action of the Legislature." *Ibid.*

In response to the Court's general abrogation of the common-law *nullum tempus* doctrine, the Legislature passed *N.J.S.A.* 2A:14–1.2. That statute, in pertinent part, provides a uniform ten-year limitations period applicable to actions commenced by the State or its subdivisions:

> Except where a limitations provision expressly and specifically applies to actions commenced by the State or where a longer limitations period would otherwise apply, and subject to any statutory provisions or common law rules extending limitations periods, any civil action commenced by the State shall be commenced within ten years next after the cause of action shall have accrued.
>
> [*N.J.S.A.* 2A:14–1.2(a).]

■ Transit asserts that the plain language of *N.J.S.A.* 2A:14–1.2 permits it to contest its tax assessments because *N.J.S.A.* 54:3–21 does not "expressly and specifically" refer to the State and its political subdivisions. The Senate Judiciary Committee statement makes it clear that the Legislature intended *N.J.S.A.* 2A:14–1.2 to apply to cases where "under the common law doctrine of *nullum tempus,* the State and its agencies [had been] exempt from statutes of limitations generally applicable in civil actions." Senate Judiciary Committee, *Statement to Senate Bill No. 3741* (Dec. 12, 1991). That the Legislature, in enacting *N.J.S.A.* 2A:14–1.2, was concerned only with establishing a uniform ten-year statute of limitations for actions commenced by governmental entities where no such limitation had previously existed under the doctrine of *nullum tempus* also comports with common sense. In *State v. State Troopers Fraternal Ass'n,* 134 *N.J.* 393, 418, 634 *A*.2d 478 (1993), we stated:

> Our conclusion is reinforced by Judge Learned Hand's classic admonition that '[t]here is no surer way to misread any document than to read it literally.' *Guiseppi v. Walling,* 144 *F.*2d 608, 624 (2d Cir.1944). As we observed in *Schierstead v. Brigantine, supra,* [29 *N.J.* 220, 148 *A*.2d 591 (1959)] "statutes are to [be] read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'" 29 *N.J.* at 230 [148 *A*.2d 591] (quoting *Morris Canal & Banking Co. v. Central R.R. Co.,* 16 *N.J.Eq.* 419, 428 (Ch.1863)).

■■ The common-law doctrine of *nullum tempus* has not been applied to the State or its instrumentalities in real-property tax appeals. The filing deadline imposed under *N.J.S.A.* 54:3–21 in contesting property tax assessments has been applied to governmental entities as well as private litigants. The Legislature could not have intended *N.J.S.A.* 2A:14–1.2 to give governmental entities a longer statute of limitations than they previously had enjoyed.

### III

*N.J.S.A.* 54:3–21 provides in pertinent part:

A taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county, or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, may, on or before April 1 [August 15 for years prior to 1992] appeal to the county board of taxation by filing with it a petition of appeal....

It is undisputed that Transit's appeals for tax years 1981 to 1990, filed on or about August 15, 1991, were untimely under that statute.

■ We have previously interpreted "taxpayer feeling aggrieved" in *N.J.S.A.* 54:3–21 broadly to include all entities having an interest in the real property that is the subject of a property-tax assessment. *Village Supermarkets, Inc. v. Township of W. Orange*, 106 *N.J.* 628, 525 *A.2d* 323 (1987) (holding that commercial lessee had sufficient interest in shopping mall's tax assessment to challenge as "taxpayer feeling aggrieved" under *N.J.S.A.* 54:3–21). No cases support Transit's claim that state instrumentalities are not "taxpayers" within the meaning of the statute. Indeed, we have specifically held that "a taxpayer who claims an exemption from an assessment falls within the category of an aggrieved person" where the taxpayer is a municipality, a political subdivision of the State. *County of Bergen v. Borough of Paramus*, 79 *N.J.* 302, 305, 399 *A.2d* 616 (1979); *see also Rabstein v. Township of Princeton*, 187 *N.J.Super.* 18, 24, 453 *A.2d* 553 (App.Div.1982)

("[T]he [township's] counterclaims should be dismissed since the Township failed to pursue timely claims for relief before the Mercer County Board of Taxation."). As the Tax Court noted below, " 'Taxpayer' is a generic term which includes the State of New Jersey and its instrumentalities to the extent that they have interests in real property which are assessed and subject to tax under the property tax statutes." 13 *N.J.Tax* at 345.

■ Our courts have never construed legislative intent to exempt state instrumentalities from the statutory limitations period provided for appealing tax assessments. Rather, they have held that both appealing taxpayers and taxing districts must adhere strictly to the deadlines prescribed by statute. Failure to file a timely appeal is a fatal jurisdictional defect. *Clairol v. Kingsley*, 109 *N.J.Super.* 22, 262 *A.*2d 213 (App.Div.), *aff'd*, 57 *N.J.* 199, 270 *A.*2d 702 (1970), *appeal dismissed*, 402 *U.S.* 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971); *Mayfair Holding Corp. v. Township of North Bergen*, 4 *N.J.Tax* 38, 41 (Tax 1982) (holding that statutory filing requirement is an "unqualified jurisdictional imperative, long sanctioned by our courts").

Filing deadlines in actions contesting local property-tax assessments have long been applied to taxpayer governmental entities as well as to private litigants. *F.M.C. Stores Co. v. Borough of Morris Plains*, 100 *N.J.* 418, 424, 495 *A.*2d 1313 (1985) ("taxing districts are required to comply with the time prescriptions for filing of tax appeals, as with all other statutory requirements"); *City of Newark v. Fischer*, 3 *N.J.* 488, 70 *A.*2d 733 (1950) (dismissing appeal filed by city from judgment of county board as filed out of time); *Rabstein, supra*, 187 *N.J.Super.* at 24, 453 *A.*2d 553 (dismissing township's counterclaims as filed out of time); *Curtiss–Wright Corp. v. Borough of Wood–Ridge*, 2 *N.J.Tax* 143 (Tax 1981) (finding that absent timely appeal, taxing district was not entitled to increase of its assessment); *New Jersey Turnpike Auth. v. Township of Monroe*, 2 *N.J.Tax* 371, 375 (Tax 1981) (*Monroe*) (holding that court was barred from hearing claim of

exemption in years in which Authority failed to file appeals pursuant to *N.J.S.A.* 54:3–21).

## IV

Strong public policy concerns dictate that the State and its instrumentalities strictly adhere to the filing-time limitations of *N.J.S.A.* 54:3–21. As the Tax Court properly recognized, "Statutes of Limitations in tax cases always have been strictly construed due to the necessity of predictability and certainty of governmental budgets and revenues." 13 *N.J.Tax* at 343 (*citing F.M.C. Stores, supra,* 100 *N.J.* at 424, 495 *A.*2d 1313 (1985) ("Strict adherence to statutory time limitations is essential in tax matters, borne of the exigencies of taxation and the administration of local government."); *McCullough Transp. Co. v. Division of Motor Vehicles,* 113 *N.J.Super.* 353, 360, 273 *A.*2d 786 (App.Div. 1971) ("Limitation periods for claims for refund are common administrative provisions found in tax legislation and justified by the need for predictability of revenues by public agencies.")); *see also Bass River Tp. v. Driscoll,* 3 *N.J.Tax* 177 (Tax 1981) (holding that legislative policy is that proceedings involving assessment of taxes and governmental fiscal matters be brought within specified periods of time).

Local governments are highly dependent on the revenues generated through local property taxation. In construing a statute, courts must consider "not only the particular statute in question, but also the entire legislative scheme of which it is a part." *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987). The tax court observed that

> the entire property tax structure [Title 54] is fashioned so that contests of property tax assessments must be promptly filed and concluded, so as not to prejudice the budgetary and fiscal stability of the municipalities that so heavily rely on the property tax. If all government agencies had ten years from January 1, 1992 [the accrual date found in *N.J.S.A.* 2A:14–1] to contest assessments, the resulting uncertainty would be chaotic. Municipalities would be subject to appeals by governmental entities covering as many as ten years of assessments, which would be devastating if the assessments were reduced or set aside.
>
> [13 *N.J.Tax* at 344 (footnote omitted).]

The Legislature did not intend such an absurd and chaotic result.

Transit argues, however, that fiscal stability concerns also apply to the State. That is true, but not to the extent that such fiscal stability concerns apply to the municipalities that rely so heavily on property-tax revenues. As Transit itself observed, most of the property of the State and its governmental units is generally exempt from taxation when used for public purposes. *See N.J.S.A.* 54:4–3.3. Consequently, neither Transit nor the State will often be called upon to pay tax bills, provided they file their exemptions and appeals in a timely fashion.

## V

It is a well established precept of statutory construction that when two statutes conflict, the more specific controls over the more general. *Kingsley v. Wes Outdoor Advertising Co.*, 55 *N.J.* 336, 339, 262 *A.*2d 193 (1970); *State by State Highway Comm'r v. Dilley*, 48 *N.J.* 383, 387, 226 *A.*2d 1 (1967). *N.J.S.A.* 54:3–21 establishes a detailed procedure whereby aggrieved taxpayers can appeal a property assessment. That statute sets a date by which the taxpayer must file a complaint to a county board of taxation. It also provides a stream-lined procedure for those assessments that exceed $750,000, whereby the taxpayer can appeal directly to the Tax Court.

Conversely, *N.J.S.A.* 2A:14–1.2 provides an extended limitations period for all civil actions commenced by the State, except where a limitations provision expressly applies to actions by the State. That statute does not specifically delineate which State actions are governed by the statute and which are not. Rather, that statute applies generally to all State claims not expressly controlled by other statutory limitation periods. Since *N.J.S.A.* 54:3–21 is much more specific than *N.J.S.A.* 2A:14–1.2, the former prevails over the latter.

## VI

We therefore hold that *N.J.S.A.* 2A:14–1.2 is inapplicable to the State or its constituent parts in challenges to real-property tax assessments. The Legislature determined in *N.J.S.A.* 54:3–21 that aggrieved taxpayers must file their petitions of appeal on or before April 1 (formerly August 15) of the tax year. We have held that the State is a taxpayer under that statute. Nothing in the legislative history of *N.J.S.A.* 2A:14–1.2 indicates that the Legislature intended thereby to overturn the otherwise then-accepted conclusion that the State, *qua* taxpayer, must adhere to the specific limitations periods contained in *N.J.S.A.* 54:3–21. Consequently, the State falls within the specific and express limitations period provided in *N.J.S.A.* 54:3–21. The general ten-year limitations period granted in *N.J.S.A.* 2A:14–1.2 must yield to the specific period prescribed in *N.J.S.A.* 54:3–21.

■  Transit is an aggrieved taxpayer under *N.J.S.A.* 54:3–21 whose petitions of appeal were filed out of time. Therefore, Transit is liable for those taxes assessed against it during the tax years 1981 to 1990. The Appellate Division held, pursuant to 45 *U.S.C.A.* § 581(c)(5), that Transit is exempt from taxation retroactive to October 1, 1981. No one appeals that decision. Consequently, Transit is only liable for those taxes levied against it prior to October 1, 1981.

The judgment of the Appellate Division is affirmed.

WILENTZ, C.J., and HANDLER, POLLOCK, O'HERN, and COLEMAN, JJ., join in this opinion.

STEIN, J., has filed a separate dissenting opinion.

STEIN, J., dissenting.

The Court's disposition of this appeal is wrong, not only as a matter of statutory interpretation, but also because respect for a coordinate branch of government would dictate a different result.

The background is both relevant and brief. In a series of decisions, this Court abolished the ancient common-law rule of *nullum tempus occurrit regi* (no time runs against the king). *See Holloway v. State,* 125 *N.J.* 386, 397, 593 *A.*2d 716 (1991); *New Jersey Educ. Facilities Auth. v. Gruzen Partnership,* 125 *N.J.* 66, 69, 592 *A.*2d 559 (1991) (*Gruzen*); *Devins v. Borough of Bogota,* 124 *N.J.* 570, 579, 592 *A.*2d 199 (1991). Under the rule of *nullum tempus,* a governmental entity could assert its rights at any time without regard to the failure of a public employee or official to assert a claim within the period set forth in a statute of limitations. In *Gruzen,* this Court abrogated the rule of *nullum tempus,* effective December 31, 1991, but commended "the matter to the consideration of the Legislature for any modification of this disposition in light of the special needs of governmental agencies." 125 *N.J.* at 69, 592 *A.*2d 559. Directly in response to the Court's invitation, the Legislature enacted and the Governor signed *L.* 1991, *c.* 387, § 2, codified at *N.J.S.A.* 2A:14–1.2. The law provides:

> Except where a limitations provision expressly and specifically applies to actions commenced by the State or where a longer limitations period would otherwise apply, and subject to any statutory provisions or common law rules extending limitations periods, any civil action commenced by the State shall be commenced within ten years next after the cause of action shall have accrued.
>
> [*N.J.S.A.* 2A:14–1.2(a).]

The Senate Judiciary Committee statement accompanying the bill corroborates the bill's otherwise explicit meaning:

> Under the common law doctrine of nullum tempus, the State and its agencies were exempt from statutes of limitations generally applicable in civil actions. In a series of recent decisions, the New Jersey Supreme Court has abolished the nullum tempus rule. The effect of these decisions is to subject the State to the same limitations periods applicable to private litigants. This bill proposes to establish a uniform ten-year statute of limitations for actions commenced by governmental entities.
>
> *The ten-year period would apply unless another statute expressly provides a different period for actions commenced by the State.* As in the case of private litigants, statutory provisions extending limitations periods under particular circumstances would extend the ten-year period where applicable. The bill would also provide that in no case would the ten-year period be deemed to have begun prior to January 1, 1992.
>
> [Senate Judiciary Committee, *Statement to Senate Bill No. 3741,* at 1 (Dec. 12, 1991) (emphasis added).]

The narrow issue is whether New Jersey Transit Corporation's (Transit) tax appeals, untimely under the general tax-appeal statute, are preserved by *N.J.S.A.* 2A:14–1.2. The tax-appeal statute, *N.J.S.A.* 54:3–21, provides in part:

> A taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county, or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, may on or before April 1 [August 15 for years prior to 1992] appeal to the county board of taxation by filing with it a petition of appeal. . . .

Transit contends that because the tax-appeal limitations period does not "expressly and specifically" apply to "actions commenced by the State," *N.J.S.A.* 2A:14–1.2, the ten-year statute of limitations recently enacted by the Legislature necessarily is controlling. The Borough of Somerville (Somerville) argues that although, read literally, the ten-year statute applies to Transit's appeals, the Legislature could not have intended so extended a limitations period to apply to tax appeals, because of its potentially disruptive impact on municipal tax rates. The Attorney General responds that the Legislature intended precisely what the statute provides, and that because virtually all state property is tax exempt, tax appeals by the State and its political subdivisions usually are filed to correct erroneous assessments. In that context, the Attorney General argues, the ten-year limitations period provides an appropriate safeguard against improper assessments of exempt property.

The Attorney General's position obviously is correct. Because State property generally is tax-exempt, the legislative determination to apply a ten-year limitations period to tax appeals clearly is plausible. In addition, the meaning of the newly enacted ten-year limitations statute, passed at this Court's specific invitation, is crystal clear: the *only* exceptions to the ten-year limitations period are those established by statutes that "expressly and specifically" refer to the State and its political subdivisions. Among the most basic principles of statutory construction is that if the statutory language is clear and the result not inconsistent with obvious legislative intent, a court should apply the statute as

written. *See Midland Ins. Co. v. Colatrella,* 102 *N.J.* 612, 621, 510 *A.*2d 30 (1986) (Stein, J., dissenting); *State v. Maguire,* 84 *N.J.* 508, 528, 423 *A.*2d 294 (1980).

The majority strays from that settled rule of statutory interpretation. The Court justifies its determination that the ten-year limitations period should not apply to tax appeals by the State by its conclusory observation that "[f]iling deadlines in actions contesting local property tax assessments have long been applied to taxpayer governmental entities." *Ante* at 589, 656 *A.*2d at 426. However, all but one of the cases cited by the majority to support that proposition involve the application of filing deadlines to public bodies *in their capacities as taxing districts,* and do not involve imposition of filing deadlines to preclude a public body from challenging an assessment of its own exempt property. Thus, *F.M.C. Stores Co. v. Borough of Morris Plains,* 100 *N.J.* 418, 424, 495 *A.*2d 1313 (1985), *Rabstein v. Township of Princeton,* 187 *N.J.Super.* 18, 24–25, 453 *A.*2d 553 (App.Div.1982), and *Curtiss–Wright Corp. v. Borough of Wood–Ridge,* 2 *N.J.Tax* 143, 147–48 (Tax 1981), relied on by the majority, *ante* at 589, 656 *A.*2d at 426, all involved municipalities that had sought to *increase* assessments under appeal by taxpayers but had failed to file counterclaims or appeals within the time prescribed. (The only case cited by the majority involving exempt public property held simply that public bodies must file tax appeals rather than rely only on statements of exemption filed pursuant to *N.J.S.A.* 54:4–4.4. See *New Jersey Turnpike Authority v. Township of Monroe,* 2 *N.J.Tax* 371, 379 (Tax 1981)). *See also County of Bergen v. Borough of Paramus,* 79 *N.J.* 302, 310, 399 *A.*2d 616 (1979) (holding that because of County's failure to file timely tax appeal to challenge assessment of property used for public purposes, and in view of involvement of public bodies and public funds, appeal would be deemed filed *nunc pro tunc* and matter remanded to Division of Tax Appeals).

The majority also expresses its concern that application of a ten-year limitations period to tax appeals by state agencies would be disruptive to the budgets of local governments dependent on the revenues generated from local taxation, concluding that the Legislature "did not intend such an absurd and chaotic result."

*Ante* at 591, 656 *A.*2d at 426. As noted, the Attorney General sharply disagrees, expressing confidence that application of the ten-year limitations period would not disrupt municipal budgets and that the Legislature intended the new statute to apply to *all* civil actions by the State and its political subdivisions, including tax appeals.

Because the Appellate Division concluded that Transit's property was exempt from local taxation under federal law, 45 *U.S.C.A.* § 581(c)(5) retroactively to October 1, 1981, a holding undisputed by the Court's opinion, *ante* at 592, 656 *A.*2d at 427, Somerville would be deprived of only a nominal sum if the Court were to hold that the ten-year limitations period applies to tax appeals by State entities. That result would have minimal financial consequences for the parties, would apply as written the Legislative response to the abolition of *nullum tempus* enacted at the Court's specific request, and would permit the Court to afford the Legislature an opportunity to amend the statute if indeed the Legislature did not intend for it to apply to tax appeals. On reflection, the Legislature might agree that tax appeals by the State should be governed by *N.J.S.A.* 54:3–21; it might conclude that a three-year limitations period would be adequate; or it might adopt the Attorney General's view that a ten-year limitations period is appropriate. I am uncertain about the choice the Legislature would make if the issue were posed, but I am convinced that this appeal presents little if any justification for the Court to assert a clairvoyance that it surely does not possess.

I would reverse the Appellate Division judgment to the extent that it holds that *N.J.S.A.* 2A:14–1.2 does not apply to tax appeals by the State and its political subdivisions.

*For affirmance* —Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and COLEMAN—6.

*For reversal* —Justice STEIN—1.