OPINION
KUSKIN, J.T.C.
I
In this 1995 local property tax appeal, the plaintiff Pompton Lakes Senior Citizens Housing Corp. (“Housing Corp.”) seeks an exemption from taxation, under the “charitable purposes” provisions of N.J.S.A. 54:4-3.6, for a residence occupied by the superintendent of a senior citizens housing complex (“Housing Complex”). The residence and Housing Complex are both owned by the plaintiff, but are located on separate, adjoining tax lots. The Housing Complex enjoys an exemption from local property taxation pursuant to N.J.S.A. 55:14J-30[1] and N.J.S.A. 55:16-18, and, in accordance with the requirements of such statutes, the Housing *333 Complex makes payments in lieu of taxes. The Housing Complex has not received, or even applied for, a charitable exemption under N.J.S.A 54:4-3.6. The relevant portions of this statute provide as follows:
The following property shall be exempt from taxation under this chapter: ... all buildings actually and exclusively used in the work of associations and corporations organized exclusively for ... charitable purposes; ... the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent; ... provided, in case of all the foregoing, the buildings, or the lands on which they stand, .or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit, . . . . The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this State and authorized to carry out the purposes on account of which the exemption is claimed
The parties have filed cross-motions for summary judgment. I grant the defendant’s motion and deny the taxpayer’s motion because, under the provisions of R. 4:46-2 and the standards for consideration of summary judgment motions set forth in Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 523, 666 A.2d 146 (1995), I find that (i) there is no genuine issue with respect to a material fact, and (ii) the defendant municipality is entitled to judgment as a matter of law.
II
The Housing Corp. was formed pursuant to Title 15 of the New Jersey Statutes, N.J.S.A. 15:1-1 to :19-6 (replaced in part in 1983 by Title 15A, N.J.S.A. 15A:1-1 to :16-2). The Certificate of Incorporation, dated December 15, 1972, defines the purposes of the corporation as follows:
(a) To plan, sponsor, construct, operate, maintain, rehabilitate, alter, convert, and improve housing and housing projects for the Senior citizens of Pompton Lakes on a non-profit basis.
(b) To act as sponsors for housing and related programs pursuant to applicable provisions of N.J.S.A. 55:14J-1 et seq. (The New Jersey Housing Finance Agency Law of 1967), N.J.S.A. 55:16-1 et seq. and all other provisions of applicable state and federal laws.
*334 The certificate then sets forth certain powers of the corporation, pursuant to the two stated purposes, concluding with the following paragraph:
(h) To have and exercise all other powers necessary or convenient to effect any or all of the purposes for which the corporation is organized. Notwithstanding anything herein to the contrary, the corporation shall exercise only such powers as are in furtherance of the exempt purposes of organizations set forth in Section 501(c) of the Internal Revenue Code and its Regulations as they now exist or as they may be hereafter amended from time to time.
This Certificate of Incorporation satisfied the requirements of the Limited-Dividend Nonprofit Housing Corporations or Associations Law, N.J.S.A. 55:16-1 to -22[2]. N.J.S.A. 55:16-18 (now N.J.S.A. 40A:20-12) provided in relevant part:
When the governing body of any municipality in which a project of a housing corporation or housing association is or will be located, by resolution finds that the project is or will be an improvement made for the purposes of the clearance, replanning, development, or redevelopment of any blighted area (as defined in any law of this State) within such municipality, or for any of such purposes, then such project and improvement shall be exempt from all property taxation; provided, that in lieu of taxes the housing corporation or housing association owning said project shall make to the municipality payment of an annual service charge for municipal services supplied to said project, in such amount, not exceeding the tax on the property on which the project is located for the year in which the undertaking of said project is commenced or 15% of the annual gross shelter rents obtained from the project, whichever is the greater, as may be agreed to by the municipality and the housing corporation or housing association and approved by the authority.
On October 27, 1976, the Pompton Lakes governing body adopted a Resolution as contemplated by N.J.S.A. 55:16-18 containing a finding that the Housing Complex “will be an improvement made for the purpose of assisting the clearance, replanning, development of blighted areas in this municipality,” and providing an exemption from local property taxation in exchange for payment of an annual service charge in lieu of taxes.
Construction of the Housing Complex occurred in 1978 as contemplated by such Resolution and N.J.S.A. 55:16-18, and was financed by the then-New Jersey Housing Finance Agency *335 (“NJHFA”) pursuant to N.J.S.A. 55:14J-1 to -58.[3] N.J.S.A. 55:14J-30 (now N.J.S.A. 55:14K-37) provided that a municipality, in which a housing project financed by the NJHFA [now the New Jersey Housing and Mortgage Finance Agency (“NJHMFA”)] was located, may, by ordinance or resolution, as appropriate, provide that such project shall be exempt from real property taxation if the housing sponsor enters into an agreement with the municipality for payments to the municipality in lieu of taxes for municipal services.
As of October 1,1994, the relevant assessing date in this matter, the Housing Complex contained 100 apartment units rented to low and very low income senior citizens. The Complex had, as of such date and prior thereto, a full-time resident superintendent. The superintendent’s responsibilities included supervision of all custodial, maintenance, and grounds workers as well as any outside laborers. The Complex’s alarm systems, including emergency alarms in each of the apartments, were wired to the superintendent’s residence. The superintendent also received notification when Complex residents called for police or first aid assistance and provided access to apartments in the event of emergencies.
Prior to April 1994, the superintendent resided in one of the apartment units. In April 1994, plaintiff purchased the residence adjoining the Housing Complex for which plaintiff now seeks a tax exemption. Moving the superintendent to such residence made an additional apartment available for occupancy by a senior citizen. There was (and is) a substantial waiting list for apartments. The responsibilities of the superintendent were not changed as a result of the move, and the alarm systems for the Housing Complex were connected to the residence.
Pursuant to its Certificate of Incorporation, the Housing Corp. operated the Housing Complex on a nonprofit basis and in accordance with N.J.S.A. 55:14J-10 (now N.J.S.A. 55:14K-8), which established a maximum family income as a condition to eligibility *336 to occupy an apartment in the Complex. Because tenants of the Housing Complex were low income and very low income senior citizens as defined in 42 U.S.C.A § 1437a(b)(2), rent subsidies from the United States Department of Housing and Urban Development (“HUD”) were provided pursuant to 42 U.S.C.A § 1437f.
The initial rents for the Complex were determined by the Secretary of HUD at not more than 10% above “the fair market rental established by the Secretary periodically but not less than annually for existing or newly constructed rental dwelling units of various sizes and types in the market area suitable for occupancy by persons assisted under this section, . . . .” 42 U.S.C.A. § 1437f(c)(1). Thereafter, rents were subject to annual adjustment upon request by the property owner to the local housing agency (here the NJHFA/NJHMFA) in accordance with guidelines set forth in 24 C.F.R. § 882.108 (1997), including annual adjustment factors promulgated by HUD. These adjustment factors reflect “changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units . . . .” 42 U.S.C.A. § 1437f(c)(2)(A). A special adjustment, subject to HUD approval, may be made “to reflect increases in the actual and necessary expenses of owning and maintaining the units which have resulted from substantial general increases in real property taxes, utility rates, or similar costs” if the owner can demonstrate that such cost increases are not “adequately compensated” by the HUD annual adjustment factors. 42 U.S.C.A. § 1437f(c)(2)(B); 24 C.F.R. § 882.108(a)(2). In all events, rent adjustments must not “result in material differences between the rents charged for assisted units and unassisted units of similar quality, type, and age in the same market area, as determined by the Secretary [of HUD].” 42 U.S.CA § 1437f(c)(2)(C); see also 24 C.F.R. § 882.108(b) (providing overall limitations on rent adjustments).
Under 42 U.S.C.A. § 1437f(c)(3)(A), monthly rental assistance payments from HUD equal “the difference between the maximum monthly rent which the contract [between HUD and the local housing agency (here the NJHFA/NJHMFA) ] provides that the owner is to receive for the unit and the rent the family is required *337 to pay under section 1437a(a) of this title.” 42 U.S.C.A. § 1437a(a)(1) contemplates that the rent payment by the family will be the highest of (i) thirty percent of the family’s monthly adjusted income, (ii) ten percent of the family’s monthly income or, (iii) the portion of the welfare assistance payment, if any, to the family designated for housing costs.
Consistent with these federal statutes, the New Jersey Department of Community Affairs adopted regulations with respect to rents payable by tenants of housing financed by the NJHFA and NJHMFA. N.J.A.C. 5:80-9.1, provides:
It is the express purpose of the following regulations to promote the statutory functions and obligations of the Agency by ensuring that the rents and/or carrying charges applied in housing projects are sufficient to pay normal operating, maintenance and utility costs; provide an adequate rate of return to individuals or corporations that provide capital to assist in the development of housing projects; provide debt service payments adequate to protect the financial interest of the Agency and its bondholders; provide reserves for repair and replacement; and ensure adequate, safe and sanitary housing for the low and moderate income families that the Agency was created to serve.
See also N.J.A.C. 5:13-1.14(a) which sets forth standards for approval by the Public Housing and Development Authority of the Department of Community Affairs of rents payable by tenants of properties operated by limited-dividend housing corporations. These standards are substantially the same as those contained in N.J.A.C. 5:80-9.1.
Under the foregoing statutes and regulations, the plaintiff herein, as owner and operator of the Housing Complex, receives, from a combination of tenant payments and HUD rent subsidies, monthly rental payments equal to, and perhaps slightly greater than, fair market rent for the apartments in the Complex. Such rental payments are sufficient to pay all operating costs, payments in lieu of taxes and debt service, provide for reserves, and provide “an adequate rate of return” to those providing capital.
Ill
In Princeton Univ. Press v. Princeton Bor., 35 N.J. 209, 172 A.2d 420 (1961), the Supreme Court articulated the following *338 general legal context in which a claim for property tax exemption must be decided:
The fundamental approach of our statutes is that ordinarily all property shall bear its just and equal share of the public burden of taxation. As the existence of government is a necessity, taxes are demanded and received in order for government to function. Statutes granting exemption from taxation represent a departure and consequently they are most, strongly construed against those claiming exemption. The burden of proving a tax-exempt status is upon the claimant.
[Id. at 214, 172 A.2d 420 (citations omitted).]
The Court set forth more specific requirements for tax exemption in Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 506, 472 A.2d 517 (1984):
To secure an exemption for its real property, a corporation must meet the following three criteria:
(1) it must be organized exclusively for [charitable purposes];
(2) its property must be actually and exclusively used for the tax-exempt purpose; and
(3) its operation and use of its property must not be conducted for profit.
An additional requirement applies to plaintiffs exemption claim because the superintendent’s residence can qualify for exemption under N.J.S.A. 54:4-3.6 only derivatively, based upon the operations of the Housing Complex. Plaintiff acknowledges that, if considered independently of the Housing Complex, the residence does not and can not qualify for exemption. The standards for such a derivative exemption were set forth in Clinton Tp. v. Camp Brett-Endeavor, Inc., 1 N.J.Tax 54 (Tax 1980), where the Tax Court held that there is
a two-fold test to be applied in the case of an application for exemption involving a residential property owned and used by a religious, charitable or hospital organization whose other property is exempt from local property tax: first, whether the residence is predominantly used as an integral part of the operation of the exempt organization, rather than being primarily a convenience to the tenant, and second, whether the provision'of the residence is reasonably necessary for the proper and efficient operation of the exempt organization.
[Id. at 60.]
The applicability of this two-part test was reaffirmed in St. Ann’s Catholic Church v. Hampton Bor., 14 N.J.Tax 88, 95 (Tax 1994).
The decisions on which the Camp Brett-Endeavor test was based, as well as the Camp Brett-Endeavor and St. Ann’s Catholic Church cases themselves, all involved factual circumstances in *339 which the underlying property, that is, the property from which the residence exemption was derived, was itself tax exempt under the same statutory provisions that provided the basis for the exemption elaim for the residence. Here, the Housing Complex, from which the superintendent’s residence would derive its exemption under N.J.S.A. 54:4-3.6, is not itself exempt under that statute. The taxpayer, therefore, seeks a derivative exemption under N.J.S.A. 54:4-3.6 where the underlying property, the Housing Complex, enjoys no exemption under that statute. The taxpayer contends that, even though the Housing Complex has not formally qualified for and obtained exemption under N.J.S.A. 54:4-3.6, the Complex nevertheless serves a charitable purpose which supports exemption for the superintendent’s residence under the Camp Brett-Endeavor test.
The undisputed facts presented on the motion and cross-motion for summary judgment permit a determination by the court as to whether the Camp Brett-Endeavor test is satisfied and whether the Housing Complex could itself qualify for tax exemption under N.J.S.A. 54:4-3.6. Such latter determination will not have any impact on the tax status of the Housing Complex because: 1) the Housing Complex is not the subject of the pending appeal; 2) no application for exemption under N.J.S.A. 54:4-3.6 has been filed with respect to the Housing Complex; and 3) exemption under N.J.S.A. 54:4-3.6 for the Housing Complex may be precluded by the statutes and documents under which the Housing Complex was constructed and financed. N.J.S.A. 55:16-18 and N.J.S.A. 55:14J-30 (and their respective successor statutes) provided a specific tax exemption for housing projects such as the Housing Complex only in exchange for payments in lieu of taxes. Consequently, the more general, total exemption provided in N.J.S.A. 54:4-3.6 may not be available to the property so long as such financing remains in effect. “It is a well established precept of statutory construction that when two statutes conflict, the more specific controls over the more general.” New Jersey Transit Corp. v. Borough of Somerville, 139 N.J. 582, 591, 661 A.2d 778 (1995) (citations omitted).
*340 Based upon the undisputed facts, I conclude that the superintendent’s residence is predominantly used as an integral part of the operation of the Housing Complex, and provision of the residence is reasonably necessary for the proper and efficient operation of the Housing Complex. The claim for exemption must be denied, however, because the Housing Corp. and the Housing Complex fail to satisfy the requirements for exemption set forth in N.J.S.A. 54:4-3.6 and in Paper Mill Playhouse v. Millburn Tp., supra 95 N.J. at 506, 472 A.2d 517, that: 1) the taxpayer be organized exclusively for charitable purposes, and 2) the property be used exclusively for such purpose.
In order for a corporate taxpayer claiming a charitable exemption to satisfy the “organized exclusively” requirement, the corporation’s certificate of incorporation must provide that its purposes are solely charitable. Mega Care, Inc. v. Union Tp., 15 N.J.Tax 566, 569-71 (Tax 1996); Planned Parenthood of Bergen County, Inc. v. City of Hackensack, 12 N.J.Tax 598, 610 n. 6 (Tax 1992), aff'd, 14 N.J.Tax 171 (App.Div.1993). See also, Fountain House of N.J. v. Montague Tp., 13 N.J.Tax 387, 400-01 (Tax 1993) (holding that a corporation is “organized exclusively” for an exempt purpose only if it passes a two-pronged test, one prong of which is that the corporation be formally incorporated in compliance with the provisions of Title 15A of the New Jersey Statutes (or its predecessor, Title 15) and its certificate of incorporation set forth an exclusive purpose in compliance with N.J.S.A. 54:4-3.6, and the other prong of which is that the corporation be conducted exclusively for the accomplishment of an exempt purpose). The Tax Court opinion in Intercare Health Sys. Inc. v. Cedar Grove Tp., 11 N.J.Tax 423, 430-32 (Tax 1990), aff'd, 12 N.J.Tax 273 (App.Div.1991), certif. denied, 127 N.J. 558, 606 A'2d 369 (1992) holds that a corporation can satisfy the “organized exclusively” requirement if its actual operations are limited to an exempt purpose even if the corporation’s certificate of incorporation does not limit its purposes to the exempt activity. Although the Appellate Division affirmed the Tax Court, the Appellate Division opinion, 12 N.J.Tax at 275, seems to accept a test for “organized *341 exclusively” which is consistent with the holdings of Mega Care, Inc., supra and Planned Parenthood, supra. The Intercare opinion is discussed at length in Mega Care, Inc., supra, 15 N.J.Tax at 569-70.
The New Jersey courts have not developed a generally accepted definition of what constitutes a charitable purpose under N.J.S.A. 54:4-3.6. The definitional issue was considered in Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 284-85, 261 A.2d 143 (1970) where the Court concluded that “the determination of whether property is devoted to charitable purposes depends upon the facts or circumstances of each case. As a guide, however, it should be borne in mind that a sometimes stated justification for charitable tax exemptions is that if the charitable work were not being done by a private party, it would have to be undertaken at public expense.” Id. at 285, 261 A.2d 143 (citations omitted).
As set forth in the Housing Corp.’s Certificate of Incorporation, its purpose is “to plan, sponsor, construct, operate, maintain ... housing projects for the Senior citizens of Pompton Lakes on a non-profit basis” and to act as a sponsor in order to obtain financial assistance from the New Jersey Housing Finance Agency and under “all other provisions of applicable state and federal laws.” These purposes do not satisfy the “organized exclusively” test because a charitable purpose is neither expressed, contemplated nor required. The reference in the Certificate of Incorporation to Internal Revenue Code § 501(c) does not affect this conclusion. “[A] property owner’s exemption from federal income taxation does not determine whether the owner’s property is tax-exempt under state real-estate law.” New Jersey Carpenters Apprentice Training and Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 189, 685 A.2d 1309 (1996) (citation omitted); Presbyterian Homes, supra, 55 N.J. at 286 n. 3, 261 A.2d 143. The conclusion is also unaffected by the requirement in the Certificate of Incorporation that the Housing Corp. operate “on a non-profit basis.” “Nonprofit-status, however, cannot be equated with charitableness. Rather, it is but one factor which merits consideration in the determination whether property is *342 being used for charitable purposes.” Presbyterian Homes, supra, 55 N.J. at 286, 261 A.2d 143.
Not only is the Housing Corp. not organized exclusively for a charitable purpose, but also the Housing Complex is not used exclusively for a charitable purpose. The operation of the Complex does not relieve the government, either* state, federal, or local, of any burden whatsoever. The Housing Corp. receives at least fair market rent for each of the apartments located in the Complex. A portion of that rent is paid by the tenants based upon their income, and the balance is paid by HUD. The Housing Corp. does not subsidize any of the tenants; the federal government does.
This factual situation is quite similar to that before the court in Parker v. St. Stephen’s Urban Dev. Corp., Inc., 243 N.J.Super. 317, 579 A.2d 360 (App.Div.1990). The plaintiff sought damages for personal injuries suffered at an apartment complex owned and operated by the defendant, a nonprofit corporation created by a church to construct and operate low-income housing. The defendant claimed protection under the Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -11. The Appellate Division noted that “[w]hat is required is an examination of the entity seeking to clothe itself in the veil of charitable immunity to discover its aims, its origins, and its method of operation in order to determine whether its dominant motive is charity or some other form of enterprise.” Id. at 325, 579 A.2d 360. The receipt of federal funds would not in itself preclude immunity if the entity performed a “charitable service” and was “essentially supported” through charitable donations. Id. at 327, 579 A.2d 360. The court held that the St. Stephens Urban Development Corporation was not a charitable enterprise entitled to immunity:
[D]efendant contravenes one of the footings of charitable status-undertaking acts by which the government is relieved pro tanto from a burden it would otherwise have to perform. It is the government which pays defendant’s mortgage interest, supplies mortgage insurance, and subsidizes the tenants sufficient to meet its operating expenses, including the remaining mortgage payments. Defendant was not created to lessen the burden on government but to obtain as much funding from the government as possible and to operate the project exclusively with that *343 funding. As such, it is no more entitled to charitable immunity than the government itself.
Equally important is the absence from defendant’s operation of fund-raising activities and charitable contributions. As far as our research reveals, no New Jersey case has ever applied the immunity statute in circumstances such as these. Private charitable contributions have been involved in at least in part in every case in which immunity has been conferred. This is understandable in light of the fact that the essence of the public policy favoring charitable immunity is the preservation of private charitable contributions for their designated purposes.
[Id. at 326, 579 A.2d 360 (citations omitted).]
The relationship of the principles articulated in Parker to a local property tax exemption claim was discussed by the Tax Court in Salt & Light Co., Inc. v. Mt. Holly Tp., 15 N.J.Tax 274 (Tax 1995), aff'd o.b., 16 N.J.Tax 40 (App.Div.1996). Judge Hamill noted that the receipt of funds from government sources does not in itself disqualify an entity from receiving a property tax exemption “so long as the charitable entity to some extent relieves a burden on government.” 15 N.J.Tax at 291-92. Salt & Light Co. qualified for charitable exemption because the corporation used private donations to provide housing for individuals who were not supported by government subsidies. For those individuals receiving government subsidies, the corporation provided housing at a cost significantly below the cost the government would otherwise incur. Accordingly, the government was being relieved of a burden, and a charitable exemption was granted under N.J.S.A. 54:4-3.6.
Here, as in the Parker case, the rent for each of the apartment units in the Housing Complex (all of which were occupied by low and very low income senior citizens) was determined by HUD, or in accordance with HUD and NJHFA/NJHMFA guidelines, so that the rent equaled, or slightly exceeded, fair market rent. The difference between the modest rent actually paid by each tenant (based upon an income formula) and the fair market rent was paid by HUD as a rental subsidy. The Housing Corp. did (and does) not itself subsidize any of the rent for its senior citizen tenants. Furthermore, the Housing Corp. did (and does) not solicit or receive private charitable donations.
The receipt of private contributions is not required in order for a charity to qualify for tax exemption under N.J.S.A. 54:4-3.6. *344 Salt & Light Co., Inc., supra, 15 N.J.Tax at 291. Such exemption does, however, enable the use, for charitable purposes, of funds which otherwise would be paid to a municipality as local property taxes, just as the doctrine of charitable immunity preserves private contributions for charitable purposes. Accordingly, the public policy considerations underlying the charitable purposes tax exemption, and those underlying charitable immunity, are similar. These public policy considerations are not applicable in this case. The Housing Corp. fills a significant need for housing, but there is simply nothing “charitable” about the Housing Corp. or the use and operation of the Housing Complex. The Housing Corp.’s purposes and operations may well be laudable, but they do not relieve government of a burden and, therefore, do not qualify for exemption under N.J.S.A. 54:4-3.6. See St. Luke’s Village, Inc. v. Peapack & Gladstone Bor., 11 N. J.Tax 76, 81 (Tax 1990) (describing plaintiffs providing of affordable housing as a “worthy” and “meritorious” purpose but not a charitable use).
Because the Housing Complex does not qualify for charitable exemption under N.J.S.A. 54:4-3.6, the superintendent’s residence cannot, on a derivative basis, so qualify.
Judgment will be entered affirming the assessment on the subject property.

 Repealed by L.1983, c. 530 and replaced by N.J.S.A. 55:14K-37.

 This Law was repealed in its entirety effective April 17, 1992 by L. 1991, c. 431, § 20, and its provisions were simultaneously incorporated in N.J.S.A. 40A:20-1 to -20.

 Most of these statutes were repealed by L. 1983, c. 530, § 48 and the substance of the statutes simultaneously enacted as N.J.S.A. 55:14K-1 to -44.