720 A.2d 676

IN THE MATTER OF THE ESTATE OF CHARLES
E. PETERSON, DECEASED.

Superior Court of New Jersey
Chancery Division
Probate Part
Monmouth County

Decided July 7, 1998.

*Lomurro, Davison, Eastman & Munoz, P.A. (Edward C. East-man, Jr.,* appearing), for Donald M. Lomurro, Administrator of the Estate of Charles E. Peterson, deceased.

*Peter Verniero,* Attorney General (*Kevin M. Wolfe,* Deputy Attorney General), for the Department of Treasury, Unclaimed Property Administrator.

FISHER, P.J.Ch.

On July 2, 1998 the court heard oral argument on the application of Donald M. Lomurro, Administrator of the Estate of Charles E. Peterson, to settle the rights of the heirs and clear the way for the distribution of the estate. The following constitutes the court's determination of the issues raised.

Charles E. Peterson died, without a will, on October 16, 1996. On July 1, 1997, Donald M. Lomurro, Esq. was appointed as administrator of the estate. Since then the administrator has undertaken to locate all the heirs of the decedent. His diligent

search uncovered 31 heirs. All these heirs have been located except Charles Pettersson (a/k/a Charles Peterson) who is the son of Carl Emanuel Pettersson (decedent's paternal uncle).

The administrator has suggested a plan for distribution of the estate. There is no dispute as to the propriety of that plan with one exception. The administrator would have this court declare Charles Pettersson's share abandoned. The Department of Treasury, Unclaimed Property Administrator (the Treasury) claims that the share of Charles Pettersson should not be deemed abandoned and divided among the other heirs; rather, the Treasury contends that Charles Pettersson's share should be delivered into its custody.

The resolution of this dispute revolves around the collective meaning of four statutes. *N.J.S.A.* 3B:23–19 empowers a court "in an action for the distribution of the property of which a decedent dies intestate" to "require all those persons whose names or addresses are unknown, to appear or file their claims with the personal representative within a reasonable time and after reasonable notice". *N.J.S.A.* 3B:23–20 mandates that any person who fails to file a claim pursuant to *N.J.S.A.* 3B:23–19 "shall be forever thereafter debarred from all right, title or claim to the decedent's estate." These two statutes viewed alone would strongly suggest the validity of the administrator's position. However, two other statutes suggest otherwise.

*N.J.S.A.* 3B:23–21 was amended more recently than the two statutes mentioned above and now states in full:

> When a fiduciary states his final account and there remains in his hands a balance, devise, distributive share, dividend or sum of money to be paid to a person and the person, or his guardian, if he be an infant or mental incompetent, fails to claim the balance, devise, distributive share, dividend or sum of money within *the period of time set forth in R.S. 46:30B–37.1, then the property shall be presumed abandoned and handled in accordance with the "Uniform Unclaimed Property Act (1981)," R.S. 46:30B–1 et seq.*

(The emphasized portion of the statute above is what was added by the Legislature in 1989.) Obviously, the Legislature's intent was to require the share described in *N.J.S.A.* 3B:23–21 to be

"handled" in accordance with the Uniform Unclaimed Property Act. That seems relatively clear. But to further add to the statutory confusion, a provision of the Uniform Unclaimed Property Act declares that "[u]nclaimed property held by a fiduciary of an intestate estate payable to the unknown heirs of an intestate decedent shall be presumed abandoned 90 days after publication" of the required notice. *N.J.S.A.* 46:30B–37.1. This statute was amended as recently as 1995.

These four statutes, somewhat awkwardly, provide direction as to what is to become of Charles Pettersson's share of the estate. To be sure of the proper disposition of that share, the court must first recognize that "[u]pon the death of a person, his real and personal property devolves ... in the absence of testamentary disposition, to the heirs." *N.J.S.A.* 3B:1–3. Accordingly, Charles Pettersson, wherever he is, became the lawful owner of his share of the estate when the decedent passed away. The statutory construction proposed by the administrator, calling for the abandonment of his share to the remainder of the heirs, constitutes a departure from the general understanding announced in *N.J.S.A.* 3B:1–3 and would lead to a forfeiture. Since forfeitures are not favored, *see, e.g., Walle v. Board of Adj. of Twp. of So. Brunswick*, 124 *N.J.Super.* 244, 306 *A.2d* 75 (App.Div. 1973), such a construction should be avoided if at all reasonable. In addition, it is well understood that in interpreting ambiguous legislation the more specific statutes or provisions normally control when in conflict with general provisions. *See, New Jersey Transit Corp. v. Borough of Somerville*, 139 *N.J.* 582, 591, 661 *A.2d* 778 (1995). Unquestionably, a number of the statutes referred to above declare the share of an heir whose whereabouts are unknown to be abandoned; indeed, *N.J.S.A.* 3B:23–21 indicates that such a share "shall be presumed abandoned." But *N.J.S.A.* 3B:23–21 also provides more specific guidance in its mandate that such a share should be "handled in accordance with the 'Uniform Unclaimed Property Act (1981)'". That is the clearest statement that comes from the applicable legislation and, because of that statement's precision and clarity, the conclusion

this court should reach is unmistakable despite the surrounding ambiguity.

The Attorney General claims that in these circumstances the share of an heir whose whereabouts are unknown is to be held by the Treasury, rather than escheated to the State or forfeited through its distribution to the decedent's other heirs. Pursuing this course avoids any forfeiture of the share of the missing heir; that share is simply held by the state pending further claim to it (with the added benefit that the state may utilize such funds until the claimant surfaces). *See, Senate Legislative Committee Statement* (appended to *N.J.S.A.* 46:30B–1):

> The uniform act also provides that title to the unclaimed property does not vest in the state but remains in the owner. The state takes custody of the property until the owner or his successors assert a claim thereto.

This approach avoids a forfeiture of Charles Pettersson's share, an event contrary to the purpose of the Uniform Unclaimed Property Act and, generally undesirable. Accordingly, it is this construction which will be applied notwithstanding the other ambiguous discussion of abandonment throughout these statutes. To adopt any other view would cause the utter evisceration of *N.J.S.A.* 3B:23–21, which is reason enough to reject that approach. *See, Gabin v. Skyline Cabana Club,* 54 *N.J.* 550, 555, 258 *A.*2d 6 (1969).

For the foregoing reasons, the court's judgment will adopt the plan of distribution urged by the administrator, with the exception that the share of Charles Pettersson will be forwarded to the Treasury to be "handled" in accordance with the Uniform Unclaimed Property Act. *N.J.S.A.* 3B:23–21. Counsel for the administrator will submit an appropriate judgment in conformity with this opinion.