194 N.J. Super. 148 (1983)
476 A.2d 333
WEST MILFORD TOWNSHIP, PLAINTIFF,
v.
GARFIELD RECREATION COMMITTEE, INC., AND STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEFENDANT.
Superior Court of New Jersey, Law Division Middlesex County.
April 20, 1983.
*150 Jeffrey M. Kassover for plaintiff (Johnson, Johnson & Murphy, attorneys).
Lawrence J. Jaskot for defendant Garfield Recreation Committee, Inc. (Fiore & Jaskot, attorneys).
George P. Cook for defendant State of New Jersey, Department of Environmental Protection (Irwin I. Kimmelman, Attorney General of the State of New Jersey, attorney).
ANDREW, J.T.C. (temporarily assigned).
This action is an appeal by plaintiff Township of West Milford (West Milford) from the grant by defendant Commissioner of the Department of Environmental Protection (DEP) of a certification of qualification for tax exemption. This certification was made pursuant to N.J.S.A. 54:4-3.63 et seq. (commonly known as the Green Acres exemption law), for property owned by defendant Garfield Recreation Committee (Garfield). The property is primarily natural woodland and is located in West Milford. The certification in issue was granted September 15, 1981 to be effective for the tax year 1982.
Defendant DEP has moved for summary judgment pursuant to R. 4:46 (in which motion defendant Garfield joins) and as such has squarely presented an issue which concerns the scope of and manner in which this court should review a determination by DEP under the Green Acres exemption law.
The posture of this case is somewhat unique and as it is relevant to a resolution of DEP's present motion the procedural history will be related here.
In July 1975 defendant Garfield made an initial application to DEP pursuant to N.J.S.A. 54:4-3.65 for the purpose of claiming the Green Acres tax exemption provided by N.J.S.A. 54:4-3.64:
All lands and the improvements thereon actually and exclusively used for conservation or recreation purposes, owned and maintained or operated for the benefit of the public by a nonprofit corporation or organization organized under the laws of this or any State of the United States authorized to carry out the purposes on account of which the exemption is claimed and which is qualified *151 for exemption from Federal Income Tax under Section 501(c)(3) of the Internal Revenue Code shall be exempt from taxation; provided, however, that the Commissioner of the Department of Environmental Protection certifies that the real property and the property owner are qualified under the terms of this act. [Footnote omitted].
The Commissioner of DEP is authorized by N.J.S.A. 54:4-3.66 to certify that the property is maintained or operated for the benefit of the public, if, after a public hearing has been held, he finds that the property is open to all on an equal basis, and that a tax exemption would be in the public interest.
Garfield's application stated that it intended to preserve the land in a natural woodland state, and that the property would be used as a location for group recreation activities for the residents of the City of Garfield. Garfield also filed an initial statement with the West Milford assessor, pursuant to N.J.S.A. 54:4-4.4, stating its right to the claimed exemption. West Milford filed with DEP a formal written objection to the grant of certification on the basis that the land would not be open to all on an equal basis, as required by N.J.S.A. 54:4-3.66. On September 15, 1975, after publication of notice of public hearing[1] and invitation to submit written statements, DEP certified the eligibility of the land for exemption, effective January 1, 1976.[2]
In accordance with N.J.A.C. 7:35-1.5(f),[3] Garfield filed an application for recertification with DEP in May 1978. Given *152 the opportunity to comment, West Milford again filed a written objection to the recertification, charging that Garfield had failed to document public use of the property over the last three years. In response, Garfield submitted copies of correspondence to and from various members of the Garfield community suggesting that certain groups had either used or had been granted permission to use the property during the initial certification period. Additionally, a communication from West Milford's assessor stated that the gate to the property had been locked, and "keep out" signs had been posted for two years. A site inspection conducted by DEP failed to confirm these allegations.[4] Recertification for three years was granted by DEP by letter dated September 15, 1978.
In April 1981 Garfield applied for another recertification, stating that the property was open and used as a day camp for all citizens, including Boy and Girl Scouts. West Milford again opposed the recertification by letter dated July 14, 1981, which stated that there had been no maintenance of the property for the past three years, and that the property in its unmaintained condition could not support the types of activities alleged to take place there. West Milford also sent photographs of the property to illustrate its objections.
DEP records show two site inspection reports dated July 1, 1981. The first indicates that the inspectors could not find the property, perhaps due to the absence of the "Green Acres" sign which DEP requires to be posted on exempted property. The second July 1 site inspection report, naming a different inspector, stated that the property was poorly maintained and that the land was overgrown with high grass and underbrush.
*153 In response, Garfield sent a letter to DEP dated August 28, 1981, stating that the property had been cleaned up and that more work was expected to be done on the property in the fall. The letter also included a list of organizations who were said to have used the land in the summer of 1981. Another site inspection followed on September 9, 1981. The report stated that the inspector foresaw problems with keeping the area cleaned up, and noted that there was evidence of campfires and drinking on the property, and that scrapwood, roofing shingles and beer cans were present.
DEP issued the certification of eligibility for one year, rather than the standard three-year period, on September 15, 1981.[5] The reasons for the grant of the certification were stated in the summary report, which listed the following findings:
1. An application for recertification of eligibility was filed with the Department. The application was submitted on April 20, 1981, by the property owner, Garfield Recreation Committee, Inc.
2. The property included in this application is located in West Milford Township, Passaic County.
3. The site included three tax lots consisting of 53.6 acres of land.
4. The property was certified as eligible for a standard three year tax exemption on September 15, 1978 by Commissioner Jerry Fitzgerald English.
5. The recertification application contains specific information regarding the continuance by the applicant organization and indicates no changes in those factors which led to the original approval of the organization and the land.
6. A site inspection revealed that the Green Acres Tax Exemption sign was not posted. The applicant has been notified of such.
7. The property owner reported that the site was used as a day camp for Garfield citizens and by boy and girl scout groups.
8. The Department's decision granting this exemption was not contested.
9. West Milford Township submitted a written statement claiming that the recertification application failed to provide documented statements as to public use and attendance.
A site inspection on July 1, 1981 revealed that the property was accessible to the public but poorly maintained.
West Milford filed a complaint against Garfield and DEP with the Tax Court on October 28, 1981, challenging the 1981 *154 recertification and seeking a denial of the exemption. The complaint alleged that DEP had granted the exemption without sufficient information from Garfield to qualify Garfield for the exemption "in that the lands and improvements thereon have not been actually and exclusively used for conservation or recreation purposes" pursuant to N.J.S.A. 54:4-3.64.
At the same time, West Milford filed a notice of appeal with the Appellate Division, naming only Garfield as an adverse party. West Milford moved before the Appellate Division to transfer the appeal to the Tax Court, which motion was granted on January 12, 1982. DEP, on February 5, 1982, moved before the Tax Court to intervene in the transferred action, and to consolidate the two matters. DEP also filed a petition for rehearing and recall of the Appellate Division's transfer order. The Appellate Division denied DEP's request, and on March 18, 1982 DEP moved before the Supreme Court for leave to intervene and to appeal the order of transfer to the Tax Court on the ground that appeals from DEP determinations made pursuant to N.J.S.A. 54:4-3.63 et seq., should properly be heard in the Appellate Division. On June 8, 1982 the Supreme Court ordered that the matter, together with the action pending in the Tax Court, be remanded to the Superior Court, Law Division, 91 N.J. 233, and consolidated for hearing pursuant to the order of the Supreme Court dated July 10, 1981.[6]
The primary issue presently before this court is the standard that should be used to review the action of DEP in granting the *155 recertification on September 15, 1981.[7] Defendants DEP and Garfield assert that DEP's decision should be affirmed because there was "sufficient credible evidence" in the agency record below to support DEP's action and because there are no material issues of fact present in the case. Plaintiff contends that it is entitled to a trial de novo, and that this court may review the facts, take testimony and make independent findings of fact.
The posture of this case and the uncertainty about the appropriate standard of review result from what West Milford regards as an apparent conflict in the court rules. R. 2:2-3(a)(2) provides that appeals may be taken to the Appellate Division as of right to review final decisions or actions of any state administrative agency or officer, except those matters prescribed by R. 8:2, which provides for initial review by the Tax Court of an action of a state agency with respect to a tax matter.[8] Unsure of the proper forum, plaintiff sought review of DEP's action in both courts.
Initially, this court feels constrained to comment upon the procedure followed because it is the view of this court that West Milford proceeded incorrectly. Our Supreme Court has observed that a court may go beyond that which is necessary to decide a particular issue if a need for guidance exists. Busik v. Levine, 63 N.J. 351, 363-364 (1973). It is readily apparent that procedural guidance would be appropriate and useful.
N.J.S.A. 54:4-3.63 et seq. grants to DEP only the power *156 to certify real property as qualified or eligible for exemption.[9] It does not give DEP the authority to exempt property from taxation. That power belongs to the municipal tax assessor who, pursuant to N.J.S.A. 54:4-4.4:
... May at any time inquire into the right of a claimant to the continuance of an exemption hereunder and for that purpose he may require the filing of a further statement or the submission of such proof as he shall deem necessary to determine the right of the claimant to continuance of the exemption.
N.J.S.A. 54:4-3.68 clearly established the procedure for implementing the Green Acres tax exemption by providing:
The tax exemption established by this act shall be granted or revoked pursuant to the provisions of [N.J.S.A. 54:4-4.4] except as otherwise provided therein.
N.J.S.A. 54:4-4.4 specifically implicates the municipal tax assessor in the exemption process, as is generally the case with local property tax exemptions. Conspicuously absent from N.J.S.A. 54:4-3.68 is any indication that it is DEP, instead of the municipal assessor, who will follow the prescribed procedures for the granting or revocation of tax exemptions.
This conclusion is further supported by the language used by the Legislature in N.J.S.A. 54:4-3.66 and 3.67. Both of these statutes provide that DEP may certify that a property owner and certain real property are "qualified" for a tax exemption and that a tax exemption "would be" in the public interest.[10] If *157 the Legislature had intended that DEP was to be the agency charged with the authority for granting the exemption, it could have used clear language to that effect. It could easily have provided that DEP grant or deny the exemption instead of providing that DEP certify that an applicant and its property "qualified" for an exemption. This is apparent in DEP's own regulation, N.J.A.C. 7:35-1.2, where by definition a certification of tax exemption by DEP means that an applicant is eligible for exemption pursuant to N.J.S.A. 54:4-4.4.
Moreover, the Legislature used the conditional tense in stating that DEP could determine that a tax exemption "would be" in the public interest instead of "is" in the public interest. It clearly appears as such that the certification by DEP is merely advisory and not a final determination of tax exemption.
Ostensibly, the legislative design was to require an applicant to first obtain a certification from DEP that real property was "qualified" or "eligible" for tax exemption because of the expertise of that agency in determining uses of property related to conservation or recreation. Thereafter the municipal assessor could grant and monitor the exemption pursuant to N.J.S.A. 54:4-4.4 in order to insure that all of the statutory requisites for exemption were being satisfied. N.J.S.A. 54:4-3.64.
If West Milford's assessor found that the claimant did not meet the statutory requirements for exemption, he or she should have assessed the property for its full and fair value. N.J.S.A. 54:4-23. It would then have been left to Garfield to pursue an appeal to the county tax board and from there, if unsuccessful, to the Tax Court. N.J.S.A. 54:3-21. The Tax Court hears and determines all issues of fact and of law de novo. N.J.S.A. 2A:3A-4(b).
*158 The fact that the only reported cases in this State involving appeals from a DEP determination pursuant to N.J.S.A. 54:4-3.66 were processed as appeals from a state administrative agency pursuant to R. 2:2-3(a)(2) and therefore decided by the Appellate Division of the Superior Court does not dictate a different conclusion. See Princeton v. Bardin, 147 N.J. Super. 557 (App.Div. 1977), certif. den. 74 N.J. 281 (1977), and Wildlife Preserves, Inc. v. Lincoln Park, 151 N.J. Super. 533 (App.Div. 1977). A close reading of each of these cases demonstrates that the precise issue of the proper forum was never raised and in each instance the Appellate Division applied the standard scope of review for agency determinations.[11]
While the June 8, 1982 and July 10, 1981 orders of the Supreme Court have resolved that the consolidated matters will be heard in the Superior Court, Law Division, by a judge of the Tax Court temporarily assigned, the July 8, 1982 order did not state what standard of review this court should apply to this case in its present posture.
It is defendants' position that this court should apply the standard utilized by appellate courts in reviewing the decision of an administrative agency. As stated in Dore v. Bedminster Tp. Bd. of Ed., 185 N.J. Super. 447 (App.Div. 1982):
It is well settled that the appropriate standard of review to be applied by an appellate court reviewing the final decision of an administrative agency is for the court to examine the record to determine whether sufficient or substantial credible evidence exists therein to support the agency decision. Atkinson v. Parsekian, 37 N.J. 143, 149 (1962); In re Silberman License Suspension, 169 N.J. Super. 243, 255-256 (App.Div. 1979), aff'd 84 N.J. 303 (1980); In re Grossman Tenure Hearing, 127 N.J. Super. 13, 22-23 (App.Div. 1977). The agency determination is not to be vacated in the absence of a showing that the decision is arbitrary or capricious, that it lacks support in the record or that it violates legislative policies expressed or fairly to be implied in the statutory scheme administered by the agency. See Campbell v. Civil Service Dep't, 39 N.J. 556, *159 562 (1963). Furthermore, should there be substantial evidence in the record to support more than one result, it is the agency's choice which governs. See New Jersey Bell Tel. Co. v. State, 162 N.J. Super. 60, 77 (App.Div. 1978). [at 453]
DEP argues that this court should not conduct a plenary trial de novo for the reasons set forth in Wildlife Preserves, Inc. v. Lincoln Park, supra. That case involved the initial application for certification of eligibility for the Green Acres tax exemption. Following a public hearing in which the taxing district participated, DEP's Commissioner granted the certification as to some lots and denied it as to others. Both the claimant and the taxing district appealed. The court found that DEP's determinations were "supported by sufficient credible evidence in the record, considering the proofs as a whole, with due regard to the Department's expertise in the area." Id. 151 N.J. Super. at 545. Defendant particularly relies on the court's comment that:
A trial-type hearing is neither mandated nor appropriate for determination of applications for certification under the statute ... The decision by the Commissioner that the particular parcel of real property and the owner thereof are or are not qualified under the terms of the Green Acres tax exemption statute involved essentially the resolution of nonfactual issues of law, policy and discretion. In such case "the appropriate oral process for resolving" the issues is "the method of argument, not the method of trial" ... The public hearing prescribed by N.J.S.A. 54:4-3.66 and N.J.A.C. 7:35-1.5(c) and (d) is obviously for the purpose of giving interested persons an opportunity to present their views. The decision making process here involved is, in essence, not concerned with resolution of disputed adjudicative facts ... [Id. at 542; citations omitted]
DEP contends that to permit plaintiff to proceed in a plenary de novo fashion at this time would undermine the Appellate Division's ruling in Wildlife Preserves and place an undue burden on the courts. It further argues that, had the Supreme Court, by its order transferring the matter to this court, intended to deviate substantially from "the generally accepted standard of review," it would have done so in more explicit terms.
Plaintiff agrees that, if this case were before the Appellate Division, the "sufficient credible evidence" standard would apply. Plaintiff observes, however, that this matter is before the Law Division as an action seeking relief in lieu of prerogative writs.
*160 R. 4:69, "Actions in Lieu of Prerogative Writs," does not presently specify the standard of judicial review. R. 4:69-4, "Power to Review Facts," was deleted effective April 1, 1975. As explained by Pressler, Current N.J. Court Rules, Comment R. 4:69:
That rule expressly authorized the court in actions in lieu of prerogative writs to review the facts and make such independent findings thereon as were necessary. The deletion of the rule should not be construed as in any derogating [sic] from this power of the court. The rule was deleted because the court's power is both inherent and a matter of constitutional imperative. See N.J. Const. (1947), Art. 6, § 5, par. 4. No rule is, therefore, necessary and indeed, a rule might be construed as limiting. The court should simply exercise its power with respect to factual determinations as required and as appropriate in each case.
It is not clear whether factual determinations should be based on an independent review of the record, or if the court may conduct a trial de novo. See, e.g. Three L Corp. v. Newark Bd. of Adj., 118 N.J. Super. 453 (Law Div. 1972), an action in lieu of prerogative writs to review a denial of a use variance. The court reversed the action of the board of adjustment as arbitrary, based upon a review of the record. Cf. O'Neill v. State Highway Dep't, 40 N.J. 326 (1963), in which the issue was whether the plaintiff in a proceeding in lieu of prerogative writs was entitled to a jury trial. The court decided there was no such right, but implicit in its decision was the conclusion that factual issues could be tried de novo by the trial court.
In the present case, it would be appropriate for this court to conduct a trial de novo.
As explained earlier, if this matter had proceeded in the manner intended by the Legislature, a trial de novo might properly have been had in the Tax Court on the issue of whether Garfield and its property met the statutory requirements for exemption.
It is clear that the administrative record below is inadequate. The staff summary report states that a site inspection on July 1, 1981 revealed that the property was accessible to the *161 public. This is not convincing, since one of the DEP's inspectors could not even locate the property on the same date. There is no indication that the September 9, 1981 site inspection, stating that, despite the cleanup claimed by Garfield, the property was still littered, was ever considered by DEP in making its decision. There are no findings which would explain why the decision to recertify for only one year rather than the standard three year period was made.
More importantly, the record below makes no findings that the land and improvements were actually and exclusively used for conservation or recreation purposes, as required by N.J.S.A. 54:4-3.64. It is this aspect of DEP's proceedings that West Milford contests. The only information on this point is the statement made by Garfield in its application and the letter in opposition filed by West Milford.
N.J.S.A. 54:4-3.67 requires that the Commissioner of DEP annually certify that the property owner and the real property are qualified under the terms of the act, and that a tax exemption would be in the public interest. The record below seems to show that DEP examines applications in terms of the public interest, but makes few inquiries as to the statutory requisites for qualifications.[12]
Clearly, there are not sufficient facts before this court to determine whether the property meets the statutory requirements for exemption. It has been DEP's position that it is not required to conduct a public hearing before recertification. N.J.S.A. 54:4-3.67 would seem to require, though, that DEP conduct the factfinding that is necessary to determine if the property meets the statutory requirements. While this court could remand the matter to DEP, in the interest of resolving the matter expeditiously this court will conduct a hearing de *162 novo to determine the factual issues. O'Neill v. State Highway Dep't, supra, and R. 4:69 both support this court's authority to conduct such a hearing. Cf. Lyon v. Glaser, 60 N.J. 259, 273-276 (1972).
Contrary to DEP's assertion, such a hearing will not undermine the decision of the Appellate Division in Wildlife Preserves, Inc. v. Lincoln Park, supra. That court stated that DEP's determination essentially involves the resolution of nonfactual issues of law, policy and discretion. It is undisputed, however, that the property and its owner must, in addition to DEP's certification, meet the other requirements enumerated by N.J.S.A. 54:4-3.64, which are essentially factual questions.
Accordingly, since there are genuine issues of material fact, defendant's motion for summary judgment is denied. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74 (1954).
The parties are advised that the scheduled trial will be de novo on the disputed factual issues.
NOTES
[1] DEP's records do not contain any description of the public hearing. No "desire to speak" requests are included in DEP files.
[2] The period which the certification covered was not stated by the September 15, 1975 letter. DEP records indicate that a three-year certification was standard and, in fact, Garfield was not required to reapply until 1978.
[3] N.J.A.C. 7:35-1.5(f) provides:

Not later than July 1 of every third-calendar year succeeding the year of certification the applicant shall submit a form DEP/TE102 "Application for Recertification of Exemption from Real Property Taxes" and form F.S.Rev. June 1970 "Further Statement" informing the Department of current land use.
[4] Unlike the DEP files on the 1975 initial certification, and the 1981 recertification, the 1978 recertification file contains no "Site Inspection Report." The Staff Summary Report for that year, however, states that a site inspection was made on August 17, 1978, revealing that the property was accessible and that no "keep out" signs were posted.
[5] A subsequent letter, dated September 29, 1981, clarified that the exemption was for a one-year period only.
[6] That order states, in relevant part, that:

... [W]hen relief in lieu of a prerogative writ is sought with respect to any matter then pending in the Tax Court involving a state or local tax, including enforcement of an order or judgment of the Tax Court or county board of taxation, the action shall be transferred to the Superior Court, Law Division, and, for the purpose of having such claim adjudicated, unless good cause to the contrary is shown, the matter shall be heard by a judge of the Tax Court who has been temporarily assigned to the Superior Court, Law Division, by the Chief Justice.
[7] Plaintiff initially contended that DEP was required to conduct a public hearing on application for recertification, but no longer pursues that argument.
[8] It was apparently DEP's position before the Appellate Division and the Supreme Court that the statutory jurisdiction of the Tax Court extends only to those matters which were heard by the former Division of Tax Appeals. Since a decision of DEP, allegedly, was not reviewable by the Division, DEP contended that the jurisdiction of the Tax Court could not be enlarged by court rule.
[9] N.J.A.C. 7:35-1.2 defines "certification of tax exemption" to mean "establishment by the Commissioner of eligibility for exemption pursuant [to] the provisions of [N.J.S.A. 54:4-4.4]." [Emphasis supplied].
[10] N.J.S.A. 54:4-3.66 provides in pertinent part:

The Commissioner of the Department of Environmental Protection may certify that the real property is maintained or operated for the benefit of the public only if he finds, after a public hearing on the application has been held, that the real property for which an application for tax exemption is made is open to all on an equal basis and that a tax exemption for such property would be in the public interest. [Emphasis supplied]
N.J.S.A. 54:4-3.67 provides:
The Commissioner of the Department of Environmental Protection shall on or before September 15 of the pretax year certify that a property owner and the real property for which an exemption is claimed are qualified under the terms of this act and that a tax exemption would be in the public interest. The commissioner shall forthwith deliver such certification to the property owner and the tax assessor of the taxing district in which the real property is located. [Emphasis supplied]
[11] A case cannot be considered as a binding precedent on a legal point that was not in issue. 20 Am.Jur.2d Courts, § 190; 21 C.J.S. Courts § 186. See Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979).
[12] Other than a statement by the applicant, DEP apparently does not even require verification of the organization's continuing tax exempt status under the Federal Internal Revenue Code, § 501(c)(3), which is a requirement for eligibility for Green Acres exemption.