833 A.2d 1110 (2003)
363 N.J. Super. 582
Betty SIMON, Trustee, L.L.C., Plaintiff-Respondent,
v.
CHICAGO TITLE INSURANCE COMPANY, Defendant-Respondent,
v.
Township of Little Egg Harbor, Third-Party Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 2003.
Decided November 6, 2003.
Lawrence L. McIver argued the cause for appellant (Gilmore & Monahan, attorneys; Charles W. Hutchinson, Toms River, on the brief).
John-Paul Madden argued the cause for respondents, Betty Simon and Chicago Title Insurance Co. (Madden, Madden & Del Duca, attorneys; Mr. Madden, on the brief).
Before Judges KING, LINTNER and LISA.
*1111 The opinion of the court was delivered by LISA, J.A.D.
Defendant, Little Egg Harbor Township, appeals from a summary judgment awarding damages of $23,323.63 plus interest to plaintiff, Betty Simon and third-party plaintiff, Chicago Title Insurance Company. The judgment is for a refund of the amount paid by Simon for the purchase of a tax title lien covering Block 44, Lot 3, issued by Little Egg Harbor, and the payment of subsequent taxes on the property, where the tax title lien was later found to be invalid. We affirm.
The State of New Jersey acquired title to Block 44, Lot 3 in 1969 from Vernon and Theresa Stompler. The property was thereafter carried on the tax exempt list. N.J.S.A. 54:4-3.3. In 1994, the assessor received a letter dated July 22, 1994 from the New Jersey Attorney General's office, stating in its entirety:
Please be advised that Block 44, Lot 3 and Block 46, Lot 13 were not conveyed to the State of New Jersey from Citibank. As our investigation indicated there was a one-half interest in a William A. Inman and one-half interest in a Nina Rutler, Helen Banard and Marjorie Methot.
Neither party is able to inform us what generated this apparent response to the assessor. What is clear, however, from a careful reading of the letter is that it does not say that the State does not own the property or that the named private individuals do own it. It is undisputed that the State has indeed continued to own the property throughout the years in question. The assessor apparently interpreted the letter to indicate current ownership by the individuals mentioned and assessed the property to them as taxable property in 1995 and 1996. Specifically, the property was assessed to "Inman, William A., et al, unknown address." This was a mistake. Predictably, the taxes were not paid.
Because of the unpaid taxes, the Township offered for sale a tax title lien, which Simon purchased on September 12, 1996. After holding the certificate and paying all accruing taxes for more than two years, Simon initiated an in personam tax foreclosure action. She eventually obtained a judgment by default on May 8, 2000. Simon thereafter learned that her title was no good because of the State's ongoing ownership of the property. Simon initiated this action against her title insurer, Chicago Title, which brought a third-party complaint against the Township. Chicago Title settled with Simon and continued the action against the Township.
The parties filed cross-motions for summary judgment. Judge Higbee found from the undisputed facts that the taxes assessed against the property were erroneously assessed due to the assessor's mistake, the sale of the tax title lien to Simon was void, and Simon and Chicago Title were entitled to a refund. We agree.
The Township argues that plaintiffs' claim for reimbursement is time-barred by N.J.S.A. 54:3-21. A taxpayer "feeling aggrieved by the assessed valuation of the taxpayer's property" must appeal the assessment by April 1 of the tax year. Ibid. In essence, therefore, the Township contends it was incumbent on the aggrieved party to timely file an appeal to contest the classification of the property as taxable rather than exempt. West Milford Township v. Garfield Recreation Comm., 194 N.J.Super. 148, 157, 476 A.2d 333 (Law Div.1983). The aggrieved party, according to the Township, is the State of New Jersey, which it claims should have timely appealed to restore the property's status to tax exempt.
*1112 In support of its position, the Township relies on the Supreme Court's holding in New Jersey Transit Corp. v. Borough of Somerville, 139 N.J. 582, 661 A.2d 778 (1995), that State agencies are taxpayers within the meaning of N.J.S.A. 54:3-21 and must meet the April 1 deadline to assert a claim that their property is exempt from local taxation. Id. at 588, 592, 661 A.2d 778. There the state agency (Transit) acquired property in 1978. However, because of confusion over ownership of various parcels, Somerville continued to classify the property as taxable and continued to assess it as such to its prior owner, Conrail. In 1990, Somerville attempted to collect back taxes from Transit for the years 1981 to 1990. Transit then contested the assessments, contending the property should have been tax exempt during those years. The Court rejected Transit's assertion that as a public entity it was not bound by the deadline requirement of N.J.S.A. 54:3-21. The Court explained that the issue would not often arise because the State and its agencies will not "often be called upon to pay tax bills, provided they file their exemptions and appeals in a timely fashion." Somerville, supra, 139 N.J. at 591, 661 A.2d 778.
We find the Township's reliance on Somerville unpersuasive. In that case the state agency was the owner of the property and engaged in contacts with the local assessor between 1979 and 1990 regarding its ownership status. In 1990, when the municipality determined that Transit indeed owned the property, it sought to collect back taxes from Transit, which owned the property during the years of delinquency. During those years, the property had been assessed as taxable. In view of the confusion regarding the ownership of the parcel, Transit failed to make certain that this parcel was included on the municipality's exempt tax list for the years in question. Therefore, Transit was held accountable for its inaction regarding property it knew or should have known it had acquired.
Knowledge by a state agency of its obligation to act was not an issue in Somerville, and the Court's holding did not turn on that issue. The situation here is quite different. The State had filed the required statement of exemption, N.J.S.A. 54:4-4.4, and perfected its tax exempt status for the subject property many years before the assessor's action in 1994. The municipality does not assert that it notified the State of the change in status of the property from exempt to taxable.
Subsequent to the tax years involved in Somerville (1981 to 1990), the Legislature amended N.J.S.A. 54:3-21 by what is commonly referred to as "Chapter 75." L. 1991, c. 75. This legislation added a new requirement, not previously part of New Jersey local property tax law, that "[e]very assessor, prior to February 1, shall notify by mail each taxpayer of the current assessment and preceding year's taxes." N.J.S.A. 54:4-38.1; L. 1991, c. 75, § 32. See Centorino v. Tewksbury Tp., 18 N.J.Tax 303, 310 (Tax 1999). The legislation added a corresponding provision to N.J.S.A. 54:3-21, requiring appeals to be filed on or before April 1, "or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later." L. 1991, c. 75, § 28.
Thus, beginning with tax year 1992, the Legislature imposed this mandatory notice of assessment requirement "to provide ample notice for taxpayers to preserve their appeal rights." Centorino, supra, 18 N.J. Tax at 310-11. This procedure is designed to preclude the violation of a taxpayer's right to appeal an increased or changed assessment of which it had no knowledge. Id. at 313. In Somerville, the *1113 court applied the pre-amendment version of N.J.S.A. 54:3-21. See Somerville, supra, 139 N.J. at 588, 661 A.2d 778. The Chapter 75 provisions were not applicable in that case, and, as we have stated, notice to the property owner (the state agency) of the assessment for the years in question was not an issue. Somerville is not controlling.
In the case before us, the State was out of the loop. It was not "called upon to pay tax bills." It received none. Nor did it receive notice of a change in assessment status. Acceptance of the Township's argument would require the State to scour the assessment records each year of every municipality in which it owns property to assure itself that local assessors have not incorrectly assessed its property to third parties and file an appeal in any such instance. There is no basis to impose such an obligation on the State or other public entities to protect against assessors' mistakes.
In Somerville, the Court noted the public policy underlying N.J.S.A. 54:3-21, to protect municipalities from having their finances unsettled by retroactive tax appeals. Somerville, supra, 139 N.J. at 590, 661 A.2d 778. By requiring disputes regarding the exemption of property from taxation, along with other disputes affecting revenues to be anticipated from local property taxes, to be resolved promptly, municipalities can fix their budgets and conduct their fiscal affairs sensibly and effectively. Ibid. This important public policy precludes taxpayers from sitting on their rights to the detriment of local governments. Here, however, because the State was not on notice that its right to tax exempt status was implicated, it cannot be said that the State sat on its rights. It is also in the public interest to encourage parties to purchase tax title liens to enable municipalities to receive their lost tax revenues. Lonsk v. Pennefather, 168 N.J.Super. 178, 182, 402 A.2d 259 (App.Div.1979), certif. denied, 82 N.J. 285, 412 A.2d 792 (1980). This public policy is advanced by our decision in this case.
The tax title lien at issue here was void in its inception. It was based on an assessment against purported owners who held no interest in the property and on purported delinquent taxes which were incorrectly assessed against this tax exempt property. "The assessment herein being void, the tax sale held upon such an assessment is equally void." Pioneer Gun Club v. Tp. of Bass River, 61 N.J.Super. 104, 108, 160 A.2d 183 (Ch.Div.1960).
The Legislature has contemplated that in appropriate circumstances a tax sale may be set aside: "If the sale shall be set aside, the municipality shall refund to the purchaser the price paid by him on the sale, with lawful interest...." N.J.S.A. 54:5-43. In Pioneer Gun Club, the Chancery Division applied the statute to order a refund with interest where the United States acquired the subject property in 1949, but the assessor apparently did not receive or overlooked the abstract of the deed from the county clerk. The assessor thus continued to assess the property as taxable and the municipality sold a tax title lien for taxes assessed from 1952 to 1954. The court reasoned:
[T]he property was owned by the United States of America when the property was assessed for taxes ..., and w[as]... exempt from taxation; therefore, the assessment was void and of no effect and, ... there was no valid tax lien sale. It matters little that the assessor may not have received a copy of the abstract from the county clerk to put him on notice of the sale [to the United States]. The fact must control and not the acts based thereon.

*1114 [Pioneer Gun Club, supra, 61 N.J.Super. at 108, 160 A.2d 183.]
We applied similar reasoning in Tontodonati v. City of Paterson, 229 N.J.Super. 475, 551 A.2d 1046 (App.Div.), certif. denied, 117 N.J. 35, 563 A.2d 808 (1989). There the municipality assigned two tax sale certificates to the plaintiff by private sale. However, at the time of assignment, both were invalid, one because the municipality had accepted payment of the taxes, and the other because the property had never been in arrears. Id. at 478, 551 A.2d 1046. We held that under those circumstances N.J.S.A. 54:5-43 entitled the plaintiff to a refund of the purchase price plus interest from the date of sale. Id. at 485, 551 A.2d 1046.
No one suggests that the assessor's action in this case was anything other than an honest mistake made in the good faith exercise of the assessor's duties. There is no basis, however, upon which the Township should receive a windfall for taxes to which it was never entitled.
Affirmed.