841 A.2d 990 (2004)
366 N.J. Super. 626
STATE of New Jersey, Plaintiff-Appellant,
v.
EATONTOWN BOROUGH, Defendant-Respondent.
State of New Jersey, Plaintiff-Appellant/Cross-Respondent,
v.
Township of Lakewood, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 2004.
Decided February 19, 2004.
*992 Janet B. Greenberg-Cohen, Deputy Attorney General, argued the cause for appellant in A-495-02T1 and appellant/cross-respondent in A-498-02T1 (Peter C. Harvey, Attorney General of New Jersey, attorney; Patrick DeAlmeida, Deputy Attorney General, of counsel; Ms. Greenberg-Cohen, on the brief).
Gene J. Anthony, Eatontown, argued the cause for respondent Eatontown Borough (Mr. Anthony, on the brief).
Scott W. Kenneally argued the cause for respondent/cross-appellant Township of Lakewood (Starkey, Kelly, Blaney, Bauer & White, attorneys; Mr. Kenneally, on the brief).
Before Judges HAVEY, FALL and PARRILLO.
*991 The opinion of the court was delivered by HAVEY, P.J.A.D.
These are back-to-back appeals, consolidated for the purpose of this opinion. The central issue is whether the State of New Jersey was required to file a timely appeal pursuant to N.J.S.A. 54:4-63.11 challenging added and added/omitted assessments issued by the defendant municipalities on state-owned, motor vehicles inspection stations, occupied and operated by a private, for-profit entity. Judge Small, in the Tax Court, concluded that the State's failure to file timely appeals barred its challenge to the assessments. We agree, and affirm the summary judgment orders dismissing the State's appeals challenging the assessments issued by the Township of Lakewood and Borough of Eatontown for the tax years 1999 and 2000. On Lakewood's cross-appeal, we affirm the summary judgment order declaring that the *993 properties were tax exempt for tax years 2001 and 2002.
On or prior to the tax year 2000, the State entered into written agreements with Parsons Infrastructure & Technology Group, Inc. (Parsons), whereby Parsons agreed to operate Division of Motor Vehicles inspection stations situate on the state-owned properties in Lakewood and Eatontown. As a result, the municipalities revoked the tax-exempt status of the properties. On July 24, 2000, Lakewood issued to the State and Parsons a six-month added assessment for the tax year 2000. Likewise, in September 2000, Eatontown issued an added/omitted assessment on the State's Eatontown property for the tax years 1999 and 2000. On March 29, 2001, the State filed simultaneous appeals with the Ocean and Monmouth County Boards of Taxation challenging the assessments. In June 2001, both Boards denied the State's appeals.
On August 13, 2001, the State filed appeals with the Tax Court. It challenged the Board's denial of exemptions for: (1) the added assessment issued by Lakewood for 2000 and Lakewood's regular assessment for 2001; and (2) Eatontown's added/omitted assessment for the years 1999 and 2000, and its assessment for 2001. The State also filed direct tax appeals with the Tax Court challenging the assessments for the tax year 2002.
The parties filed cross-motions for summary judgment. The State argued that the subject properties were exempt from taxation under N.J.S.A. 54:4-3.3 as state-owned properties. The Tax Court agreed, and granted summary judgment in favor of the State as to the 2001 and 2002 assessments, since the State's appeals challenging the assessments for these tax years were timely. However, by separate order, the court dismissed the State's appeals challenging the 1999-2000 assessments because the State failed to file timely appeals in accordance with N.J.S.A. 54:4-63.11, which governs appeals from added assessments.[1] By doing so, the court rejected the State's argument that, because the assessments were ultra vires, the court should declare them void under the Uniform Declaratory Judgments Act (Act), N.J.S.A. 2A:16-50 to -62, despite the statutory bar. The State now appeals from that order. Lakewood cross-appeals, claiming that the Tax Court erred in determining that the state-owned property was tax exempt as to tax years 2001 and 2002.

I
We first address Lakewood's cross-appeal.
N.J.S.A. 54:4-3.3 provides in pertinent part that "[e]xcept as otherwise provided by article 1 of this chapter (§ 54:4-1 et seq.), the property of the State of New Jersey ... shall be exempt from taxation under this chapter...." Judge Small concluded that because this section conditions exemption from taxation only upon state ownership of the property, and not the nature of the property's use, the property enjoys tax exemption status despite Parsons' profit-driven use. We agree with the Tax Court's analysis in its entirety.
In doing so, we acknowledge Lakewood's argument, joined by Eatontown, that N.J.S.A. 54:4-3.3 is not unconditional. It provides for tax-exempt status "[e]xcept as otherwise provided by article 1 of this chapter...." Two article 1 provisions are pertinent here. The first, known as the *994 Leasehold Taxing Act, N.J.S.A. 54:4-2.3, provides:
When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate.
The municipalities argue that this statute applies because the written contract between the State and Parsons was a "de facto" lease.
The second pertinent statute is N.J.S.A. 54:4-1.10, which provides:
When real property which is exempt from taxation is used by a private party in connection with an activity conducted for profit, and the use does not render the real property taxable pursuant to section 1 of P.L.1949, c. 17 (C. 54:4-2.3) or otherwise, the real property shall be assessed and taxed as real property of the private party. The private party is subject to liability for taxation to the same extent as though he owned the property or any portion thereof, unless the owner consents to the taxation thereof. For purposes of this act, "use" means the right or license, express or implied, to possess and enjoy the benefits from any real property, whether or not that right or license is actually exercised.

[Emphasis added.]
This section was intended "to close a loophole in current law, which provided that exempt property leased to a non-exempt party was taxable but if the same property were used under a non-lease arrangement, the exemption was preserved." New Jersey Highway Auth. v. Town of Bloomfield, 8 N.J. Tax 637, 641-42 (Tax 1987) (citing Senate Revenue, Finance and Appropriations Comm., Statement to Assembly Bill No. 833, L. 1984, c. 176). The municipalities claim, in the alternative, that if the agreement with Parsons is not a lease, this statute is applicable because the state-owned parcels were "used" by Parsons, "a private party in connection with an activity conducted for profit...." N.J.S.A. 54:4-1.10.
We need not decide whether in fact the Parsons' contract was a "de facto" lease, N.J.S.A. 54:4-2.3, or whether Parsons used the properties for a profit-driven purpose, N.J.S.A. 54:4-1.10. Suffice it to say that in either event the tax liability is imposed on the lessee (N.J.S.A. 54:4-2.3) or the "private party" user of the premises (N.J.S.A. 54:4-1.10), not the fee owner of the property. By its clear terms, the Leasehold Taxing Act "does not create a lien on the property interest of the owner...." Todd Shipyards Corp. v. Township of Weehawken, 45 N.J. 336, 340, 212 A.2d 364 (1965). Rather, the lien attaches to the leasehold estate, resulting in the personal liability of the lessee. Ibid. See also N.J.S.A. 54:4-2.8. Similarly, under N.J.S.A. 54:4-1.10, when a private party uses tax-exempt property in connection with an activity conducted for profit, it is the "private party" that "is subject to liability for taxation to the same extent as though he owned the property...." Consequently, since it was the State's property interest in the parcels, and not Parsons, that the municipalities sought to reach in issuing the assessments to the State, Judge Small properly granted the summary judgment as to tax years 2001 and 2002.[2]

*995 II
As noted, the Tax Court dismissed the State's appeals of the assessments for 1999 and 2000, because the appeals were not filed on or before December 1 of the year of levy, as required by N.J.S.A. 54:4-63.11. The State argues that, by doing so:
the Tax Court failed to recognize that the added assessments were improperly issued when there had been no change in ownership. As such, Lakewood had no authority to issue the tax bills and the assessments. Being void as beyond the municipality's power, it is as if the assessments were never made and the statute of limitations for contesting the assessments was, therefore, not triggered.
"`[T]he right of appeal in tax cases is purely statutory and ... all statutory requirements must be strictly complied with to invest the reviewing tribunal with subject matter jurisdiction.'" Royal Bradley Assocs. v. Bradley Beach Borough, 252 N.J.Super. 401, 403-04, 599 A.2d 1288 (App.Div.1991) (quoting 18 Washington Place Assocs. v. City of Newark, 8 N.J. Tax 608, 614 (Tax 1986)). Our courts have made clear that failure to file a timely appeal is "a fatal jurisdictional defect." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 425, 495 A.2d 1313 (1985); New Jersey Transit Corp. v. City of Newark, 16 N.J. Tax 1, 5 (Tax 1996). Strict adherence to statutory time limitations is essential in tax litigation because of the "exigencies of taxation and the administration of local government," F.M.C. Stores Co., supra, 100 N.J. at 424, 495 A.2d 1313, and of the "need for predictability of revenues by public agencies." William McCullough Transp. Co. v. Division of Motor Vehicles, 113 N.J.Super. 353, 360, 273 A.2d 786 (App.Div.1971); see also New Jersey Transit Corp. v. Borough of Somerville, 139 N.J. 582, 590 (1995).
It is now well settled that the State and other public entities are subject to the filing time limitations imposed by the tax laws. See Somerville, supra, 139 N.J. at 588-89, 661 A.2d 778 (and cases cited therein); New Jersey Transit, supra, 16 N.J. Tax at 4-6; see also F.M.C. Stores Co., supra, 100 N.J. at 424, 495 A.2d 1313 ("taxing districts are required to comply with the time prescriptions for the filing of tax appeals, as with all other statutory requirements"). The State in this case acknowledges its duty to comply with statutes of limitations under the tax laws, but argues that the time limit was never "triggered" because the assessments were ultra vires. We disagree. We hold that the State's claim of exempt status could and should have been raised in a timely fashion before the County Boards of Taxation.
As Judge Small recognized, in hindsight, there was no legal merit to the position initially taken by the tax assessors of Lakewood and Eatontown that, because of the private nature of Parsons' use of the subject properties, the properties did not enjoy tax-exempt status under N.J.S.A. 54:4-3.3. However, we reject the State's position that, because the assessments were ultra vires, the statute of limitations under N.J.S.A. 54:4-63.11 does not bar its challenge. Our Supreme Court has observed in a different setting that:
There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are ultra vires in the primary sense and void; the latter, ultra vires only in a secondary sense which does not preclude ratification *996 or the application of the doctrine of estoppel in the interest of equity and essential justice.
[Summer Cottagers' Assoc. of Cape May v. City of Cape May, 19 N.J. 493, 504, 117 A.2d 585 (1955).]
To us, the issue whether the assessments here were "utterly beyond the jurisdiction" of the municipalities or merely an "irregular exercise of a basic power" was at least open to question when the assessments were issued. Once Parsons assumed sole occupancy and control of the inspection stations, the municipalities revoked the exempt status because of the change in use. They did so on the good-faith, but legally incorrect assumption, that they were assessing the State under N.J.S.A. 54:4-2.3 and/or N.J.S.A. 54:4-1.10 based on Parsons' purported lease status or its use. In our view, the State's ultra vires position could and should have been raised by a timely appeal, during which the Boards of Taxation could have sorted out the position taken by the municipalities, and entered a judgment accordingly. On this point, Judge Small observed:
[T]he State government on receipt of an assessment from a municipality has an obligation to have in place a system to see that its complaint is filed in a timely fashion. And having failed to do that[,] the municipalit[ies] should ... not be put to the disadvantage of having to have special limitations for special taxpayers.
We agree. The State's failure to comply with the statute of limitations foreclosed its ultra vires argument in the Tax Court.
Our conclusion finds at least tacit support in Somerville. There, New Jersey Transit Corporation (Transit), a department within the Department of Transportation, owned property in the Borough of Somerville. Somerville, supra, 139 N.J. at 584, 661 A.2d 778. In 1990, the Borough sent Transit a tax bill for the property for tax years 1981 to 1990. Id. at 585, 661 A.2d 778. On August 15, 1991, Transit filed petitions with the County Tax Board contesting the assessments under N.J.S.A. 27:25-16 (Transit tax exemption) and N.J.S.A. 54:29A-1 (granting various exemptions to rail property). Ibid. In finding that the appeals were barred as untimely under N.J.S.A. 54:3-21, which requires appeals of assessments to be filed on or before April 1 of the tax year, the Court in Somerville underscored the consistent holdings of our courts that aggrieved parties "must adhere strictly to the deadlines prescribed by statute," and that this jurisdictional rule applied to governmental entities as well as private litigants. Id. at 589, 661 A.2d 778. Significant to resolution of the issue before us, the Court so held notwithstanding the fact that Transit had raised essentially the same argument the State raises here, that Transit and its property were exempt from taxation.[3]
Moreover, a fundamental policy reason under the tax law dictates against acceptance of the State's ultra vires argument. As noted, the record suggests that the municipalities here acted entirely in good faith in issuing the added and added/omitted assessments. Thus, the municipalities had the right to rely on the repose of the statute of limitations for purposes of predictability of revenue and sound administration of local government. Ibid.[4]

*997 III
The State argues that, despite the statute of limitations under N.J.S.A. 54:4-63.11, the Tax Court was empowered under the Declaratory Judgment Act (Act) to declare the added/omitted assessments void as being ultra vires. We reject the argument.
The Act grants "[a]ll courts of record... power to declare rights, status and other legal relations...." N.J.S.A. 2A:16-52. Its general purpose is to provide a means by which rights and obligations may be resolved in a case "that has not yet reached the stage at which either party may seek a coercive remedy." Rego Indus., Inc. v. American Modern Metals Corp., 91 N.J.Super. 447, 452-53, 221 A.2d 35 (App.Div.1966). Generally, it rests in the sound discretion of the trial court whether declaratory relief under the Act should be granted. Passaic Valley Sewerage Comm'n v. City of Paterson, 113 N.J.Super. 148, 151, 273 A.2d 359 (App. Div.1971). However, ordinarily the provisions of the Act should not be invoked where another adequate remedy is available. Rego Indus., Inc., supra, 91 N.J.Super. at 453, 221 A.2d 35. Further, "an action for declaratory judgment `cannot be used as a substitute for an appeal." Nolan v. Judicial Council of Third Cir., 346 F.Supp. 500, 512 (D.N.J.1972).
Here, Judge Small's denial of declaratory judgment relief was a sound exercise of judicial discretion. Lakewood and Eatontown had already taken "coercive" actions by removing the State's property from the exemption list. The issue as to the validity of the municipalities' actions under N.J.S.A. 54:4-3.3 was joined once they assessed the parcels as nonexempt properties, and gave the State proper notice of the assessment. At this point, the State had an adequate remedy by appealing in a timely manner the actions the municipalities had taken. The State could not circumvent that appellate procedure by seeking declaratory judgment relief. Indeed, the jurisdictional imperative of filing timely tax appeals would be rendered a nullity if an aggrieved party is permitted to challenge the validity of an assessment in a declaratory judgment action instead of adhering to the time constraints of the tax laws.
We also reject the State's alternative argument that the Tax Court should have entered judgment declaring that any liens attaching to the State's properties as a result of the assessments are unenforceable. The Tax Court properly denied this relief on the basis that the State's request was premature since the municipalities had not yet sought to enforce the liens and the value of the liens had not yet been fixed. We agree.[5]
We reject the State's argument that relief as to the enforceability of the lien was mandated because "fundamental constitutional dictates concerning the structure of our government" are implicated *998 here. "[A] declaratory judgment should be withheld when the request is in effect an attempt to have the court adjudicate in advance the validity of a possible defense in some expected future law suit." Donadio v. Cunningham, 58 N.J. 309, 325, 277 A.2d 375 (1971). In addition, a court should hesitate to reach and determine an issue of constitutional magnitude unless "absolutely imperative in the disposition of the litigation." Id. at 325-26, 277 A.2d 375.

IV
Finally, the State argues that the Tax Court erred in refusing to consider its contentions that the municipalities' notices revoking the State's property tax exemption were inadequate and confusing.
Lakewood first sent notice of the added assessment to the State on July 24, 2000. On August 7, 2000, Lakewood's assessor sent a letter expressing the opinion that Parsons is a profit-making corporation, leasing the subject property from the State to operate an inspection station. Thereafter, on August 28, 2000, the State informed the assessor of its continued ownership of the property. The State further notified the assessor that Parsons does not lease the property, which continued to be used for public purposes. By letter dated September 5, 2000, the assessor acknowledged receipt of the State's letter and requested construction cost figures. The State supplied the information by letter dated September 25, 2000. Lakewood sent the State another notice of the added assessment on September 22, 2000. On March 29, 2001, the State filed a notice of appeal with the Ocean County Tax Board.
On October 6, 2000, Eatontown's assessor forwarded a tax bill for the tax years 1999 and 2000, to the State by certified mail, return receipt requested. According to the certification of Eatontown tax assessor, Thomas Lenahan, he received a phone message from Jim Baskell of the Department of Transportation on October 2, 2000, objecting to the tax assessment of the subject property. On November 16, 2000, Eatontown forwarded a delinquent tax notice to the State in the form of a copy of the delinquency report list. By certified letter dated December 15, 2000, Eatontown advised the State that: (1) the subject property was being placed upon the 2001 tax rolls of the Borough; (2) the subject property had been placed on both the 1999 omitted/added tax list and the 2000 added assessment tax list; and (3) a delinquent tax bill in the amount of $297,272.13 exists for the subject property. On March 1, 2001, Eatontown forwarded a second delinquency notice to the State, and on March 9, 2001, sent a letter regarding the Borough's tax assessment of the subject property. The State responded by letter dated March 14, 2001, describing the state-owned property as exempt from property taxes. Thereafter, on March 30, 2001, the State filed a notice of appeal with the Monmouth County Tax Board.
The Tax Court concluded that the State received timely and adequate notice of the assessments, and we agree. The law recognizes a presumption may arise that mail properly addressed, stamped, and posted was received by the party to whom it was addressed. SSI Med. Servs., Inc. v. State, Dep't of Human Servs., 146 N.J. 614, 621, 685 A.2d 1 (1996). Invocation of the presumption requires a showing that: (1) the mailing was correctly addressed; (2) proper postage was affixed; (3) the return address was correct; and (4) the mailing was deposited in a proper mail receptacle or at the post office. Ibid. (citing Lamantia v. Township of Howell, 12 N.J. Tax 347, 352 (Tax 1992)). Based on the certification of the Eatontown tax *999 assessor, the notice of added assessment issued to the State was the same as the standard notice issued by all tax assessors. Although the record does not include a certification from Lakewood's tax assessor, the notice of added assessment issued by the Township also includes the same standard information. Both notices were addressed to the State of New Jersey and identified the subject properties by block and lot number.
Furthermore, Lakewood mailed a notice of the added assessment to the Department of Transportation in Trenton, as well as a letter regarding the status of the property. The State acknowledged receipt of that letter, dated August 28, 2000. Eatontown addressed its notice to the State at the vehicle inspection station, and forwarded a bill to the State by way of certified mail, return receipt requested, in October 2000, as well as a certified letter in December 2000, concerning the assessment. The State responded to both the Lakewood and Eatontown correspondence by way of either phone call or correspondence on several occasions. We therefore conclude that the record demonstrates that the State received adequate notice of the added and added/omitted assessments on the subject property.
Affirmed.
NOTES
[1] N.J.S.A. 54:4-63.11 provides that appeals from added assessments to the county board must be filed on or before December 1.
[2] The assessments were served upon the State and Parsons at the address of the Department of Transportation. We were advised during oral argument that Parsons has in fact challenged the added/omitted assessments issued by Eatontown for the tax years 1999 and 2000, and that the trial court ruled in Parsons' favor.
[3] Recently, in, Simon v. Chicago Title Ins. Co., 363 N.J.Super. 582, 586-87, 833 A.2d 1110 (App.Div.2003), we distinguished Somerville because in Simon, the State "was not on notice that its right to tax exempt status was implicated," and therefore, "it cannot be said that the State sat on its rights." Id. at 587, 833 A.2d 1110. Here, the State had notice of the assessments, see discussion infra, and therefore had a duty to file a timely appeal.
[4] It is true that, ordinarily, this policy consideration is applied in the context of the statute of limitations under N.J.S.A. 54:3-21, governing appeals from general assessments, since the revenue derived from such assessments is relied on in the budgetary process. Somerville, supra, 139 N.J. at 590, 661 A.2d 778. However, the policy has been cited as well where the Tax Court has held that late filing of an appeal from added assessments barred consideration of the appeal on the merits. Venture 17 v. Borough of Hasbrouck Heights, 12 N.J. Tax 152, 158 (Tax 1991).
[5] Before us, the municipalities have argued that at the very least they have an enforceable lien on the state-owned parcels to the extent of Parsons' purported leasehold interest. See N.J.S.A. 54:4-2.8. Whether or not such a lien exists will no doubt be an issue that will be raised if and when the municipalities attempt to enforce their liens. We need not address the issue here.